Malvina A. Southworth, Appellant, *vs.* The Board of Education of School District No. 131, Appellee.

*Opinion filed February 19, 1909.*

1. Certiorari—*what is not a bar to certiorari.* The fact that a property owner has begun a suit in equity to enjoin a suit to condemn her property for a school site does not affect her right to a writ of *certiorari* to quash the record which the board of education has made against her property in the matter of locating the school site thereon.

2. Same—*when petition for certiorari is not double.* A petition for *certiorari* is not double by reason of the fact that it seeks to review the record of three proceedings by the board of education to locate the site of a school house, where by each of such proceedings the board sought to locate the site for the same school house, and attempted in each to take the same or part of the same ground, including a certain part of the petitioner's land each time.

3. Same—*what acts by board of education are not merely ministerial.* The passage of a motion for the appointment of a committee to make effective the result of an election to locate a school site, and the passage of a resolution for the commencement of condemnation proceedings to acquire property for the school site, are not mere ministerial acts by a board of education but are acts reviewable on *certiorari.*

4. Schools—*prior to act of 1908 board of education could not select school site where vote was not decisive.* Prior to the amendment of clause 5 of section 10 of article 6 of the School law, effective July 1, 1908, a board of education had no power to select a suitable school site after an election for a school site had been held in which no locality received a majority of the votes cast.

5. Same—*provisions of School law for school site elections are not repealed by the Public Policy act of 1901.* The provisions of the School law relative to elections for the purpose of selecting a school site were not repealed, by implication, by the act of 1901, (Laws of 1901, p. 198,) providing for the submission "of any question of public policy" to the voters of a town, village, city, township, county or school district, and as to such elections the provisions of the School law continue in force.

6. Same—*record of board of education must show that notice of election was given.* The giving of notice of an election to select a school site is jurisdictional, and without it a board of education has no power to locate a site, no matter what may be the result of the election; and unless the record of the board shows

that such notice was given as required by the statute the record of the proceeding will be quashed on *certiorari*.

7. ELECTIONS—*presumptions as to giving notice do not arise where election is special.* The presumptions in reference to the giving of notice which attend an election held under the general Election law do not obtain in the case of a special election, such as an election to select a school site.

8. SAME—*when amendatory act of 1908, legalizing selection of school sites, has no application.* The amendatory act of 1908, purporting to legalize previous selections of school sites by boards of education in cases where, "at an election duly called and held," no one site received a majority of the votes cast, has no application to such a proceeding by. a board of education whose record fails to show that notice of the election was given.

APPEAL from the Circuit Court of Ogle county; the Hon. R. S. FARRAND, Judge, presiding.

HOYNE, O'CONNOR, HOYNE & IRWIN, and HEALY & HEALY, (MACLAY HOYNE, and WILLIAM J. HEALY, of counsel,) for appellant.

BAXTER & WIRICK, and J. C. SEYSTER, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The board of education, appellee, has three times located, or attempted to locate, a school house site on property of Malvina A. Southworth, in the city of Rochelle, in Ogle county. The boundaries of the ground sought to be taken were not the same in each instance, but one certain part of her property was included in each of the parcels upon which it was desired to locate the school house. Two condemnation suits were begun but neither has been tried. This was *certiorari* in the circuit court of Ogle county to determine the sufficiency of the record of the board of education. After the disposition of a preliminary motion the board made a return and the case was tried upon that return. The circuit court quashed the record of the first two attempts and held that the record of the third

attempt showed a compliance with the law, and as to that portion of the record the writ of *certiorari* was quashed and the petition dismissed. Mrs. Southworth appealed to this court, and here contends that the court erred in not quashing the record of all the proceedings of the board of education that were attacked by the petition. The appellee board has assigned cross-errors, and argues that the writ of *certiorari* was improvidently issued and that the court erred in quashing that part of the record which showed the first location of the school site.

In support of the cross-errors it is first urged by the board that appellant can have no relief by *certiorari* for the reason that an adequate remedy is afforded appellant by a chancery proceeding which is now pending between the parties in which an injunction against the condemnation proceedings and other relief is sought, and for the further reason that appellant has an adequate remedy by defending the condemnation suits. We do not think this point well taken.

In *Powell* v. *Bullis,* 221 Ill. 379, we said: "The circuit and superior courts of this State have jurisdiction to award the writ of *certiorari* to all inferior tribunals in this State exercising judicial or *quasi* judicial powers when such tribunals have exceeded the limit of their jurisdiction, or when they have proceeded illegally and no appeal is allowed or other method provided by law for reviewing their proceedings." The board had made a record which stood against the property of appellant, and if it had proceeded illegally or exceeded its jurisdiction it was her right to have that record quashed. Chancery is without power to quash the record, and it cannot be said that by resorting to chancery appellant elected the remedy there sought, to the exclusion of a proceeding such as this.

It is then said that the petition is double in that it seeks to test the validity of three separate proceedings, and in respect thereto the board relies upon the case of *Cresswell* v.

*Commissioners Court,* 24 Ala. 282.   In that case it was sought by *certiorari* to review two distinct orders of the commissioners court.   One of these established a public road and the other granted a license to keep a public ferry. They concerned two separate matters.   By each of the three proceedings here attacked the board sought to locate a site for the same school house, and in each it attempted to take a part or the whole of the ground that it attempted to take in each of the others.   We think it was proper to review the entire record pertaining to the matter in the same proceeding.   If in one proceeding the board had attempted to take a piece of real estate no part of which was a part of that which it attempted to take in another, or if it had sought by one proceeding to locate a site for one school house upon one parcel and had by a different proceeding sought to locate a site for another school house upon another parcel, a different question would be presented.   We do not regard the Alabama case as in point.

It is then said that the record does not show any act of the board of education pertaining to the first and second proceedings that is reviewable by *certiorari,* but that its acts in those instances consisted merely of calling the elections and canvassing the votes and were purely ministerial.   We find, however, that in addition to this, succeeding the first election, the board of education, according to its record, after showing by the canvass of the vote that the proposed site located on appellant's property had received a majority of all the votes cast, passed a motion for the appointment of a committee for the purpose of making effective the result of that election, and that after the second election the board passed a resolution providing for the commencement of condemnation proceedings to acquire the property upon which it then claimed it had located the school house site. We think the record in each instance shows, not in apt words but in language that cannot be misunderstood, that the board of education located the school house site on the

property of appellant. Those acts were not purely ministerial.

Three elections which are here involved were held, the first on February 21, 1907. According to the canvass of the vote of that election a proposed site on the property of the appellant received a majority of the votes cast. On April 20, 1907, a second election was held, at which the question submitted was whether the board should be authorized to erect a school building. No proposition with reference to the location of a site was voted upon at that election, but following that election the board, under a plain misapprehension of its power, passed a resolution directing the commencement of a condemnation suit to acquire title to property then owned by appellant, the property so to be acquired not being coterminous with that selected at the first election but including a part thereof. Thereafter another election for the selection of a school site was held on July 16, 1907. At that election several different sites were voted for, no one of which received a majority of all the votes cast. Thereupon the board, on July 25, 1907, by resolution, located the school house site upon that portion of the property of appellant which had received votes at the last election.

Paragraph 151 of chapter 122, Hurd's Revised Statutes of 1908, is a part of the law pertaining to the powers and duties of school directors in districts having a population of less than one thousand inhabitants, and reads as follows:

"It shall not be lawful for a board of directors to purchase or locate a school house site, or to purchase, build or move a school house, or to levy a tax to extend schools beyond nine months without a vote of the people at an election called and conducted as required by section 4 of article 9 of this act. A majority of the votes cast shall be necessary to authorize the directors to act: *Provided,* that if no one locality shall receive a majority of all the votes cast at such election, the directors may, if in their judgment

the public interest requires it, proceed to select a suitable school house site; and the site so chosen by them shall in such case, be legal and valid, the same as if it had been determined by a majority of the votes cast; and the site so selected by either of the methods above provided shall be the school house site for such district; and said district shall have the right to take the same for the purpose of a school house site either with or without the owner's consent by condemnation or otherwise."

Section 4 of article 9, referred to by the language just quoted, being paragraph 218 of the chapter, provides for giving ten days' notice of the holding of the election by posting notices in at least three of the most public places in the district. Paragraph 166 of chapter 122, Hurd's Revised Statutes of 1905, is part of the statute pertaining to the powers and duties of boards of education such as the appellee board, which was in effect at the time the various elections above enumerated were held. That paragraph, so far as material, provided:

"The board of education shall have all the powers of the school directors and in addition thereto and inclusive thereof they shall have the power and it shall be their duty: * * * Fifth, to buy or lease sites for school houses, with the necessary grounds: *Provided,* it shall not be lawful for such board of education to purchase or to locate a school house site or to purchase, build or move a school house, unless authorized by a majority of all the voters voting at an election called for such purpose in pursuance of a petition signed by not less than five hundred (500) legal voters of such district, or by one-fifth of all the legal voters of such district."

It will thus be seen that the board of education in July, 1907, did not possess the power, after an election for a school site was held in which no locality received a majority of all the votes cast, to select a suitable site. That power it was excluded from exercising by the proviso last quoted.

The legislature, however, in 1908, by an act which became effective on July 1, 1908, amended the fifth clause of paragraph 166 above quoted, and by that amendment boards of education such as the appellee board were given the same power to select a site if no one locality received a majority of all the votes cast, that was given to the board of directors by paragraph 151, *supra*. That amendment also added to said fifth clause the following: *"Provided further,* that all school house sites heretofore located or selected by boards of education in cases where at an election duly called and held as herein provided, no one site received a majority of all the votes cast, are hereby legalized and made valid school house sites in and for the district for which they were so located and selected," (Hurd's Stat. 1908, chap. 122, par. 166,) and it is contended by the board that the proviso last quoted validated its action in selecting a site in July, 1907, while appellant insists that this proviso, as applied to that act of the board of education, does violence to the constitution of the State and the constitution of the United States.

Turning now to the first point made by appellant, it is urged that the record does not show a valid location of the school site because it fails in several respects to evidence a compliance with paragraphs 428 and 429 of chapter 46, Hurd's Revised Statutes of 1908, which provide for the submission to the electors of school districts and various other political subdivisions of "any question of public policy." Those two paragraphs comprise the act entitled "An act providing for an expression of opinion by electors on questions of public policy at any general or special election," which came in force on July 1, 1901. It is insisted that the question of the location of a school house site is a question of public policy. The act just mentioned does not on its face seem to have been intended to regulate the holding of any election of the character of the ones under consideration, for the holding of which the statute already

provided. At the time of the adoption of this act the School act pointed out the method to be pursued in holding an election for the location of a school site, and the act of 1901 does not expressly repeal any of the provisions of any other act. Repeals by implication are not favored, and we think the provisions of the School act in reference to an election of this ·kind continue in force.

There is, however, a defect in each of the proceedings by which it was attempted to locate a school house site which we regard as fatal. The return of the board fails to contain anything from which we can see that notice of either election was given at the time and in the manner required by the School act. The board admits that the record so fails, but states that there is no law which requires it to preserve evidence of the time and place of posting the notices; that when any question arises in reference thereto it may prove by any lawful evidence that the notices were posted as required by the law, and that for this reason it is immaterial whether anything pertaining to this matter appears by the record or from the files kept by the board. The power which the board attempted to exercise was a special one, conferred, as it contended, at a special election, and the presumptions in reference to the giving of notice which attend an election held under the general election laws do not obtain in reference to an election such as this. To establish the validity of an election of the kind here in question it is always necessary to show that the notice required by the statute was given. (*People* v. *Jackson County,* 92 Ill. 441.) It was the duty of the board to give notice of either election here involved and to canvass and declare the result, and it would then have had the power to locate a school house site in accordance with the majority vote. It could only exercise the power to locate, however, after there had been a substantial compliance with the provisions of the law in reference to such an election. Giving notice was jurisdictional, and if notice was not given

by the board it had no power to locate the site, no matter what the result of any election held may have been. A corporation such as this presents proof of its acts, in a proceeding of this character, only by its record, and it was therefore necessary that proof of the act of the corporation in giving notice should be in some manner preserved of record. There being no record showing that the board gave notice, a jurisdictional pre-requisite to the location of the site is lacking.

A condition analogous arises in a proceeding for laying out a public highway, where the ultimate object, as here, is to acquire property of a private individual for public use. The statute requires that the commissioners of highways shall give notice, by the posting of notices, of the meeting to consider the petition for laying out the highway. There is no express provision in the statute that the commissioners shall, by record or otherwise, preserve evidence that the notice has been given, but it has always been held in *certiorari* that it must appear by the record that the notice was given as required by the statute. (*Highway Comrs.* v. *Smith,* 217 Ill. 250, and cases there cited.) Another proceeding analogous, so far as the question now under discussion is concerned, is that for the alteration of boundaries of school districts, where it has invariably been decided in *certiorari* that the record of the trustees must show the various jurisdictional facts, including the giving or serving of notice to or upon persons interested, in accordance with the statutory provisions pertaining to notice, although the statute does not expressly require the trustees to preserve record evidence of the giving or serving of notice.

The proviso above quoted from the amendatory act of 1908 has no application, because it does not appear by the return that the election of July 16, 1907, was an election "duly called and held." An election to select a school house site, of which notice was not given, is not an election "duly called and held." It is unnecessary to consider the consti-

tutional question or any of several propositions which have been discussed in the briefs but which have not been mentioned in this opinion.

The judgment of the circuit court will be reversed and the cause will be remanded to that court, with directions to enter a judgment quashing the record of each of the proceedings to locate a school house site mentioned in the petition for a writ of *certiorari* herein.

*Reversed and remanded, with directions.*