(No. 67693.—

ANTHONY M. STRATTON, a Minor, by Richard Stratton, his Father and Next Friend, Appellee, v. WENONA COMMUNITY UNIT DISTRICT No. 1 *et al.*, Appellants.

*Opinion filed February 16, 1990.*

414

416

RYAN, J., took no part.

Jeffrey C. Taylor and Everett E. Nicholas, Jr., of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Decatur, for appellants.

William C. Zukosky, of Urbana, and Edward Zukosky, of Wenona, for appellee.

JUSTICE CALVO delivered the opinion of the court:

Anthony Stratton, by his father, Richard Stratton, filed a petition in the circuit court of Marshall County seeking a writ of *certiorari*, declaratory relief, and an injunction to prevent Anthony's expulsion from Wenona Community Unit District No. 1 (District). The circuit court issued the writ of *certiorari*, denied the Strattons' request for injunctive relief, and entered judgment in favor of the District and its board members. The Strattons appealed, and the appellate court reversed, citing procedural error in the circuit court and a denial of due process in the District's expulsion proceeding. (171 Ill. App. 3d 640.) We granted the District leave to appeal.

Pursuant to a March 26, 1987, vote of the District's board of education, Anthony Stratton was expelled from high school for "gross misconduct." Thereafter, on April 2, 1987, Anthony, by his father, filed a petition in the circuit court alleging that the District, and the individual members of the board, "willfully disregarded" various constitutional and statutory provisions in the proceedings which culminated in Anthony's expulsion.

The petition alleged, in essence, that (1) notice of the expulsion hearing was inadequate in that (a) the letter required by statute was handed to one parent, rather than sent by registered or certified mail to both, (b) Anthony was not notified, (c) the notice stated "no facts" to support expulsion, and (d) the notice allowed insufficient time in which to prepare a defense; (2) a continuance—not conditioned upon Anthony's continued sus-

pension from school—should have been granted (a) to allow the Strattons time to prepare for the hearing, and (b) to obtain a court reporter or recording device; (3) the "grounds" for expulsion should have been "stated with particularity"; (4) the superintendent was using the expulsion hearing for personal reasons; (5) the board violated the Open Meetings Act (Ill. Rev. Stat. 1987, ch. 102, par. 41 *et seq.*); and (6) the District failed to comply with statutory procedures concerning Anthony's truancy. The Strattons requested, *inter alia*, that the court (1) declare the expulsion null and void; (2) issue an injunction commanding the District to readmit Anthony; and (3) enter an order directing that the suspension and expulsion be expunged from Anthony's school records. The Strattons requested, and were granted, a preliminary injunction, gaining Anthony's readmittance to school pending the outcome of proceedings in the circuit court.

On April 22, 1987, the date set for hearing, the Strattons were granted leave to amend their petition. The amended petition identified two bases for the action which were not included in the Strattons' original petition. The amended petition stated in pertinent part:

> "This action is brought requesting the Court to grant certiorari and grant declaratory relief and an injunction pursuant to *Illinois Code of Civil Procedure* §11—101 et seq. This action is also brought pursuant to 42 U.S.C. §1983."

In preliminary argument, counsel for the Strattons moved to strike references in the District's answer to anything beyond the minutes of the board meeting of March 26, 1987. Counsel explained the "two-fold" nature of the Strattons' petition which he claimed justified his motion. First, the Strattons requested the court to "grant certiorari" and review the proceedings of the board solely upon an inspection of its record, *i.e.*, the board's minutes or matters incorporated therein. No evi-

dence beyond the board's minutes would be considered. In the event the *certiorari* proceeding failed to resolve disputed issues, the Strattons contended, evidence could then be taken on the civil rights count.

The District's counsel noted that the answer the District had filed was in response to the original petition, not the amended petition raising *certiorari*; therefore the motion to strike was inappropriate. Further, counsel argued that the Strattons had to prove the board acted arbitrarily or capriciously, regardless of the type of action involved.

The court rejected the Strattons' position, ruling that evidence would not be limited to the "record." The court defined "record" as "the record of the school district in the proceedings recorded at the school in the transcript."

The Strattons then had four exhibits marked for identification. Exhibit No. 1 was the minutes of the board's executive session held on March 26, 1987, wherein matters relating to expulsion were considered; Exhibit No. 2 was the minutes of the open meeting held on the same date, wherein the vote on expulsion was announced; Exhibit No. 3 was an authorization and request for Anthony's school records; and Exhibit No. 4 was a letter, signed by Superintendent Fred Sams, informing Mr. and Mrs. Stratton of the impending expulsion hearing. The exhibits were admitted into evidence, and the Strattons rested.

The Strattons then moved for a directed verdict. Contending that the entire record of the expulsion proceeding was before the court for purposes of *certiorari* review, the Strattons argued that the board of education acted without jurisdiction and proceeded illegally "under the Fourteenth Amendment, the Open Meetings Act, and the Illinois School Code." The Strattons challenged the sufficiency of the minutes in that the letter providing

notice of the expulsion hearing was never incorporated into the minutes, and the minutes noted only that certain witnesses were called and failed to incorporate the substance of their testimony. Counsel concluded, "There is absolutely no evidence in the minutes as to why he [Anthony] was expelled."

The circuit court took the Strattons' motion under advisement and proceeded to hear additional evidence pursuant to section 3(b) of the Open Meetings Act (Ill. Rev. Stat. 1987, ch. 102, par. 43(b)), which provides that a court "may examine in camera any portion of the minutes of a meeting at which a violation of the Act is alleged to have occurred, and may take such additional evidence as it deems necessary." The District proceeded to call witnesses who testified regarding matters referred to in the minutes of the board of education and subjects beyond the minutes.

Fred Sams, district superintendent, testified that he prepared and kept the minutes of the board of education. Sams identified the official board minutes for March 9, 17, 23 and 26, 1987, July 14 and August 20, 1986, and November 11, 1985. Superintendent Sams identified a parent/student handbook which set forth rules of student conduct and which had been adopted by the board as evidenced by the board's August 20 minutes. Sams also identified the District's policy manual which had been adopted by the board at its November 11, 1985, meeting.

Superintendent Sams then identified a packet of documents which, he testified, had been presented at the expulsion hearing for the board's consideration and, among other things, included a chronological history of Anthony Stratton's behavior problems as compiled by Principal Lorin Stevens and Superintendent Sams, as well as various letters to Anthony's parents pertaining to Anthony's behavioral problems. The Strattons objected to consider-

ation of the materials in the packet to the extent that there was "no reference in the minutes to [the] packet or any part of it." The objection was overruled and Mr. Sams thereafter testified extensively regarding documents in the packet, the manner of compilation thereof, and meetings he and Principal Stevens had with the Strattons concerning disciplinary problems referred to therein. The superintendent, in his testimony, recounted the events which transpired at the March 26, 1987, expulsion hearing. Stevens also testified that supportive services were provided for Anthony for truancy.

During the course of Sams' testimony, the circuit court granted a writ of *certiorari*, but held that formal requirements were not necessary and proceeded to hear evidence beyond the board's minutes.

Robert Sanders, the district guidance counselor, testified that he had appeared at the March 26, 1987, meeting of the board of education and had recounted an incident involving Anthony which had occurred approximately one week earlier. Sanders provided Anthony counseling for truancy.

Lorin Stevens, the district principal, testified as to what he had told the board on the evening of March 26, 1987. Stevens related three incidents of misconduct and rule violations involving Anthony. The first incident arose from a confrontation between Anthony and another student in a physical education class on December 4, 1986. Stevens was summoned by Mr. Beckman, Anthony's teacher. When Stevens requested that Anthony come over to where Stevens was standing, Anthony walked away from him, and stated, "I don't have to kiss anybody's ass just because I'm on probation." When Stevens told Anthony to go home and get his mother, Anthony responded by saying, either to Stevens or Beckman, "If I go back to jail, I'll get even with you." Stevens told Anthony he had a witness to

that statement, referring to a student nearby. Anthony went face-to-face with the student and said, "You didn't hear anything, did you[?]" Anthony then walked away. The second incident occurred on February 20, 1987, when Anthony was involved in a fight with Brett Sams, the superintendent's son. The third incident occurred on March 19, 1987, when Anthony was asked to come to Stevens' office to discuss absences on March 16 through 18. In the course of the discussion, voices were raised and Anthony walked out of Stevens' office stating, "I won't spend any fucking time in this office." Anthony's mother was apprised of the incident by telephone. Anthony was later informed that his "gross misconduct and behavior" could not be tolerated and that he would spend the rest of the day in the superintendent's office, after which he would serve a four-day out-of-school suspension. Anthony left and did not return. Stevens then recommended expulsion to the superintendent.

On March 24, 1987, Stevens met with Anthony's father. At the meeting, Mr. Stratton was given a letter, serving notice of a March 26 hearing to consider expulsion of Anthony. Stevens had been meeting regularly with Mr. Stratton to discuss Anthony's conduct.

Stevens testified that Anthony had received the parent/student manual and he identified a document bearing Anthony's signature attesting to that fact. Mr. Stevens also identified suspension notices he had issued to Anthony and letters he had sent to Anthony's parents apprising them of the suspensions. Stevens further testified regarding various other meetings with the Strattons wherein their son's misconduct was discussed.

Sharon Stratton, Anthony's mother, was called as an adverse witness by the District. She acknowledged that she had been notified of Anthony's out-of-school suspension on March 20, 1987, and that she had actual notice as of March 25 of the impending March 26 expulsion

hearing. She, her husband, and their attorney attended the March 26 board meeting. They walked out when the board refused to grant a continuance unless Anthony remained out of school and suspended during the intervening time. ·

The District rested its case and moved for admission of its exhibits. The Strattons objected on grounds that many of the exhibits were beyond the minutes of the board meeting. The exhibits were admitted.

The Strattons presented rebuttal evidence, after noting that the court had "gone way beyond" the scope of *certiorari* proceedings. The court noted the Strattons' continuing objection regarding the limits of *certiorari* review, following which the Strattons presented evidence of their own beyond the board's minutes.

The board secretary, Sam Kimpling, testified that the meeting of March 26 began as a special meeting within which there was an executive session dealing with Anthony. However, all votes were recorded in the open session of the special meeting. The board had decided on March 23 to proceed with an expulsion hearing on March 26 and had authorized the superintendent to give notice to the parents. At the inception of the meeting, board members received an informational packet and a copy of the notification letter to Anthony's parents. Kimpling said he voted for expulsion because of Anthony's defiance and disobedience. Prominent in his decision to vote for expulsion was the incident in the physical education class.

The board president, Vaun Meinhold, agreed that the superintendent had been authorized to give notice to Anthony's parents. Meinhold considered the entire informational packet in his decision, but he was primarily concerned about the three incidents of misbehavior addressed by Stevens in his testimony before the board. Stevens said he had lost control over Anthony.

Board members Tom Lutz and Beverly Hart testified that they based their decisions to expel Anthony primarily on the three incidents related by Stevens. Lutz echoed the testimony of Kimpling and Meinhold, testifying that the board had authorized the superintendent to "set the framework in motion" for an expulsion hearing.

Anthony Stratton was called as a witness. The District objected on relevancy grounds, claiming that the issue was the propriety of the board's decision and, since Anthony did not testify before the board at the expulsion hearing, his testimony should not be considered. Counsel for the Strattons noted that review should have been confined to the record on *certiorari*, but that, given the court's ruling in that regard, Anthony should be allowed to testify. The District reiterated its position that evidence should be confined to that which was before the board. The court ruled Anthony's testimony irrelevant and immaterial. The Strattons' counsel continued to argue the point, contending that Anthony's testimony would be relevant as it related to the circumstances surrounding the imposition of suspensions which formed part of the basis for his expulsion. If the suspensions were arbitrary, counsel argued, the expulsion based upon the suspensions must have been arbitrary. The court allowed Anthony's testimony as an offer of proof and, in the course of the testimony, the court "reversed its position" and "allowed everything that [had] been said by [the] witness to be introduced into evidence."

Anthony was allowed to testify regarding incidents which formed the basis for his expulsion. Anthony claimed that he was absent March 16 through 18 because he was counseling a friend who was contemplating suicide. He tried to explain the reason for his absence to Stevens, but Stevens would not listen. Anthony admitted the use of profanity on March 19, but said he did not know Stevens was in the area. He testified he was

aware of the suspensions he received in March of 1987, but he took no steps to seek review before the board. He did not appear at the March 26 board meeting to explain his actions, although he knew of the meeting scheduled for that evening.

Sharon Stratton was recalled as a witness, testifying concerning support services provided to her son by the District. She also testified, in the form of an offer of proof, regarding a change in school officials' attitudes toward Anthony which she perceived after a fight involving Anthony and Brett Sams, the superintendent's son.

Victor Lenkaitis, a probation officer, was allowed to testify concerning certain conversations he had with Anthony in March of 1987. The conversations centered on Anthony's concern about teenage suicide, a matter which Anthony addressed in his own testimony.

Following Lenkaitis' testimony, some of which was admitted only as an offer of proof, closing arguments were heard. Counsel for the Strattons again raised the issue of the limited scope of review on *certiorari* and then proceeded to argue evidence beyond the board's minutes. The District's counsel confined his argument primarily to whether the board's expulsion decision was arbitrary and whether Anthony was afforded due process. Counsel briefly addressed review by *certiorari*, suggesting that the "record" could be amended "right up in the hearing on the certiorari."

The court found that the board's decision was not arbitrary and that due process was afforded to Anthony. The court entered judgment for the District. The Strattons appealed.

The appellate court reversed. After delineating what it believed to be the proper scope of inquiry under review by a writ of *certiorari*, the appellate court found that the trial court had erred in allowing extrinsic evidence beyond the board's minutes to be admitted. Al-

though the court found that procedural error alone was "probably grounds for reversal," the court proceeded to address "the fundamental issue of whether the plaintiff was afforded sufficient due process." (171 Ill. App. 3d at 642.) It concluded that he was not.

We disagree with the appellate court, both with respect to the appropriate scope of circuit court review and the school board's compliance with the requirements of due process. We believe the Strattons could not, given the facts of this case, restrict the circuit court's review to the school board's minutes by invoking common law *certiorari*. Moreover, we find the Strattons were not denied due process of law.

The common law writ of *certiorari* was developed to provide a means whereby a petitioner who was without avenue of appeal or direct review could obtain limited review over action by a court or other tribunal exercising quasi-judicial functions. (*People ex rel. Loomis v. Wilkinson* (1852), 13 Ill. 660, 663.) The purpose of the writ was, and is, to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, whether that body proceeded according to the applicable law. If the circuit court, on the return of the writ, finds from the record that the inferior tribunal proceeded according to law, the writ is quashed; however, if the proceedings are not in compliance with the law, the judgment and proceedings shown by the return will be quashed. (*Funkhouser v. Coffin* (1921), 301 Ill. 257, 260.) Where the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*) has not been expressly adopted, the writ of common law *certiorari* survives as an available method of reviewing the actions of agencies and tribunals exercising administrative functions. (*Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 540-41.) Where a final administrative decision has been rendered and the circuit court

may grant the relief which a party seeks *within the context of reviewing that decision*, the circuit court has no authority to entertain independent actions regarding the actions of an administrative agency. *Dubin v. Personnel Board* (1989), 128 Ill. 2d 490, 499.

However, there is no absolute right to review by *certiorari*. As in equity, where the sound discretion of the court is the controlling guide of judicial action in every phase of a suit (*Chicago v. Fieldcrest Dairies, Inc.* (1942), 316 U.S. 168, 172, 86 L. Ed. 1355, 1358, 62 S. Ct. 986, 988; 30 C.J.S. *Equity* §10 (1965)), issuance of a writ of *certiorari* is within the discretion of the court (*Deslauries v. Soucie* (1906), 222 Ill. 522, 524; *People ex rel. Fosse v. Allman* (1946), 329 Ill. App. 296, 299), the purpose of the writ being to prevent injustice (*Board of Supervisors v. Magoon* (1884), 109 Ill. 142, 147; *Allman*, 329 Ill. App. at 299). The writ should not issue where it would operate inequitably or unjustly, or in the absence of substantial injury or injustice to the petitioner. (14 C.J.S. *Certiorari* §§13, 14 (1939).) The writ will not issue where another adequate remedy is available. *First National Bank & Trust Co. v. Rosewell* (1982), 93 Ill. 2d 388, 396.

The Strattons brought their action, in part, under 42 U.S.C. §1983 (1988). Unlike a *certiorari* proceeding, a section 1983 action is not a review proceeding even when, as here, it challenges administrative action that has an adjudicative component (*Hameetman v. City of Chicago* (7th Cir. 1985), 776 F.2d 636, 640); it is an independent, original action (*Hameetman*, 776 F.2d at 640). Thus, with respect to Federal due process questions, the circuit court could take testimony regarding the school board's actions and the evidence it considered, and was not limited to the board's record. *Williams v. Day* (8th Cir. 1977), 553 F.2d 1160, 1161-62.

In this case, the Federal due process issues raised in the Strattons' petition by means of section 1983, and the issues to be determined where review is by *certiorari*—jurisdiction, legality of procedure, and evidentiary basis for the board's decision—substantially overlapped in most respects. For example, an action taken without jurisdiction over the person affected thereby results not only in a violation of State rights, but also rights to Federal due process. (*Hanson v. Denckla* (1958), 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228; *Gert v. Elgin National Industries, Inc.* (7th Cir. 1985), 773 F.2d 154, 159.) Violations of State procedures pertaining to notice and hearing often entail violations of Federal due process as well, since a State's procedural rules are usually enacted to ensure that claims are adjudicated in a manner consistent with basic principles of due process. An evidentiary basis, justifying a decision rendered by a tribunal, is necessary if the decision is to be upheld under *certiorari* review (*Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 15; *Superior Coal Co. v. O'Brien* (1943), 383 Ill. 394, 400-01; *Zenith Vending Corp. v. Village of Schaumburg* (1989), 180 Ill. App. 3d 354, 361-62), and has been required in section 1983 actions (*Green v. Board of Regents* (5th Cir. 1973), 474 F.2d 594, 595; *Simcox v. Board of Education* (7th Cir. 1971), 443 F.2d 40, 42) in order to avert a finding of arbitrary and capricious action (*Gutzwiller v. Fenik* (6th Cir. 1988), 860 F.2d 1317, 1328; *Davis v. Stamler* (3d Cir. 1981), 650 F.2d 477, 480; *Stebbins v. Weaver* (7th Cir. 1976), 537 F.2d 939, 943).

Given the overlap of issues and the inconsistent procedural posture of the case, we believe the circuit court was warranted in exercising its discretion and hearing evidence beyond the school board's minutes. Since the presence of the section 1983 claim warranted the taking of additional, but substantially similar, evidence (*Hameet-*

*man*, 776 F.2d at 640), there was no need for strict adherence to procedures normally applicable to *certiorari* review. The scope of inquiry here was broader than would have been the case had the Strattons challenged only the board's decision. Thus, the restrictions announced in *Dubin* do not apply here. Issuance of the writ of *certiorari* in this case does not alter our opinion since, given the procedural posture of the case, the court could have denied the writ in the first instance and heard evidence beyond the board's record.

Before we address the merits of this case, a few words regarding the scope of review are in order. The Strattons filed a notice of appeal from the circuit court's judgment finding that the board's expulsion of Anthony was not "arbitrary and capricious" and that the requirements of due process were met in the expulsion proceedings. Although the Strattons apparently argued other matters as well before the circuit and appellate courts, as they now do before us, the circuit court decided only the aforementioned issues and the appellate court addressed only *certiorari* and due process. We will similarly restrict the scope of our review, addressing other matters raised by the Strattons only as those matters relate to the issues properly before us. We believe a party who has received an adverse decision in the circuit court has a responsibility to obtain a court ruling upon those matters which he wishes to raise on appeal. (See *Belfield v. Coop* (1956), 8 Ill. 2d 293, 312.) Recently, in *People v. Schmitt* (1989), 131 Ill. 2d 128, 137, we held that a movant has a responsibility to obtain a ruling on his motion if he wishes to raise a question pertaining thereto on appeal. That rationale applies here as well. The Strattons could have sought specific rulings at trial on the matters not decided, or they could have pointed up the omission after the court rendered judgment. They did neither. The fact they took no action in this regard

indicates they considered these matters to be peripheral to the central questions in the case and abandoned them for purposes of appeal. They have, therefore, waived issues other than those identified in the court's order.

We will, however, briefly address at this juncture the Strattons' contention that the school board lacked jurisdiction to expel Anthony. We have reviewed the authorities cited by the Strattons (*The Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115; *People ex rel. Mark v. Hartquist* (1924), 311 Ill. 127; *Southworth v. Board of Education* (1909), 238 Ill. 190; *Betts v. Regional Board* (1986), 151 Ill. App. 3d 465; *Litin v. Board of Education* (1979), 72 Ill. App. 3d 889), and yet conclude that the board had jurisdiction to act. *Homefinders* states a general proposition with which we have no quarrel, while *Southworth, Hartquist* and *Betts* are so factually inapposite that they do not require our comment. We reject the Strattons' argument that notice by "registered or certified mail" as provided by statute (Ill. Rev. Stat. 1987, ch. 122, par. 10—22.6) is a jurisdictional prerequisite and that notice which is hand delivered is insufficient to vest the board with jurisdiction to act. Notice by means other than registered mail can be valid under Illinois law and actual notice is deemed satisfactory. *Glover v. Board of Education* (1975), 62 Ill. 2d 122, 126; *Matthiessen v. Board of Education* (7th Cir. 1988), 857 F.2d 404, 408-09.

The Strattons cite *Litin* in support of an alternative jurisdictional contention: that the board lacked jurisdiction to act because the superintendent, rather than the board, served notice on them. While the Strattons' citation to *Litin* provides a refreshing interlude, in that it is factually similar to this case and actually stands in support of the proposition for which it is cited, we believe *Litin* is distinguishable on its facts. In *Litin*, the sole issue was whether a written notice, warning a teacher of

causes which might result in charges against him, could be sent by a principal in lieu of the school board. The court in *Litin* held that the board could not delegate authority to the principal to issue such a notice. In *Litin*, there is no indication that the board was aware or approved of the principal's action prior to the sending of notice. In this case, board members testified they authorized Superintendent Sams to proceed with the expulsion process, which necessarily entailed the giving of notice. The Strattons' reliance upon *Litin* is unavailing.

We now turn to the due process question and, thereafter, the issue of whether the board's expulsion of Anthony was arbitrary and capricious.

A student's legitimate entitlement to a public education is a property interest which is protected by due process guarantees and which may not be arbitrarily taken away without adherence to minimal procedural safeguards. (*Goss v. Lopez* (1975), 419 U.S. 565, 574, 42 L. Ed. 2d 725, 734-35, 95 S. Ct. 729, 736.) Due process entails an orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights. (*Kazubowski v. Kazubowski* (1970), 45 Ill. 2d 405, 417-18.) A fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information. (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314-15, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657; *Rosewell v. Chicago Title & Trust Co.* (1984), 99 Ill. 2d 407, 411.) Due process does not require useless formality in the giving of notice (*In re J.W.* (1981), 87 Ill. 2d 56, 62), requiring only reasonable assurance that notice will actually be

given and the person whose rights are to be affected will be given reasonable time to appear and defend (*People ex rel. Loeser v. Loeser* (1972), 51 Ill. 2d 567, 572). There must be an opportunity, at a meaningful time and in a meaningful manner, for a hearing appropriate to the nature of the case. *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 437, 71 L. Ed. 2d 265, 279, 102 S. Ct. 1148, 1158-59.

Procedural due process in an administrative setting does not always require application of the judicial model (*Dixon v. Love* (1977), 431 U.S. 105, 115, 52 L. Ed. 2d 172, 181-82, 97 S. Ct. 1723, 1729), and in fact, not all procedures traditionally associated with due process in judicial proceedings are appropriate in administrative proceedings (*Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 299, citing *Hannah v. Larche* (1960), 363 U.S. 420, 4 L. Ed. 2d 1307, 80 S. Ct. 1502). The procedural safeguards mandated by due process in a particular case vary, depending upon: (1) the significance of the private interest which will be affected by the official action, (2) the risk of the erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards, and (3) the significance of the State interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural safeguards would entail. *People v. Orth* (1988), 124 Ill. 2d 326, 334.

Essentially, the Strattons contend that notice was neither timely given, nor sufficiently specific. We disagree. Neither the timing nor specificity of the notice denied the Strattons their rights to due process.

Two days' notice gave the Strattons sufficient time to prepare for the hearing in view of the fact that both the parents and Anthony were well aware of the instances of Anthony's misconduct leading up to the expulsion.

School officials had diligently kept the Strattons apprised of the incidents as they occurred. A summary of evidence to be presented was given the Strattons upon their arrival at the hearing. Moreover, the board indicated on the night of the March 26 expulsion hearing that additional time would be granted the Strattons to prepare if they agreed to a continuation of Anthony's suspension from school pending a new hearing date. We believe this condition was reasonable, given Anthony's disruptive behavior. Even with this extension, the suspension still would have fallen within the 10-day suspension period which can be imposed by school officials. (Ill. Rev. Stat. 1987, ch. 122, par. 10—22.6(b).) We are not dealing here with criminal principles of double jeopardy, as the Strattons' counsel seemed to suggest at trial, so the condition placed upon the granting of a continuance was not improper. It is not our role to question the board's wisdom or compassion (*Wood v. Strickland* (1975), 420 U.S. 308, 326, 43 L. Ed. 2d 214, 227, 95 S. Ct. 992, 1003) where there is a basis in the record to support its decision. In sum, notice to the Strattons was timely.

Notice was also sufficiently specific. The notice given to the Strattons indicated that the board would consider expelling Anthony "for gross misconduct, disobedience, and disrespect," substantially tracking the language of the statute providing for expulsion (Ill. Rev. Stat. 1987, ch. 122, par. 10—22.6(a)), which employs the terms "gross disobedience and misconduct." At the March 24, 1987, meeting with school officials, wherein he was given notice of the expulsion hearing, Mr. Stratton was brought up to date on Anthony's most recent acts of misconduct. There were no acts of misconduct of which the Strattons were unaware. The Strattons knew that the proceeding represented the culmination of a pattern of misbehavior by Anthony, rather than punishment for

any particular incident. Anthony's misconduct had simply reached a point where school officials considered him unmanageable. While not as serious as the misconduct at issue in *Betts v. Board of Education* (7th Cir. 1972), 466 F.2d 629, Anthony's undisputed pattern of disobedience and misconduct was "truly gross by any standard" (*Betts*, 466 F.2d at 635) so that references in the notice to specific incidents or definitional rules of the school authority were unnecessary.

The Strattons were given adequate notice of the expulsion hearing and an opportunity to attend. It was their choice, apparently on the advice of their counsel, not to participate in the evidentiary portion of the hearing. Thus, the testimony before the board consisted primarily of that given by Principal Stevens, who related essentially three incidents of Anthony's misconduct, upon which board members placed great weight in deciding to expel Anthony. We have previously set forth Stevens' testimony at length and need not reiterate it here; however, we believe Stevens' testimony furnished an evidentiary basis to support the decision to expel Anthony. Therefore, the decision is sustainable under either the section 1983 standard or the standard employed in *certiorari* cases since it is supported by evidence and is thus neither arbitrary nor capricious.

We believe the Strattons were accorded their rights to due process of law. Those issues which the Strattons have raised, and which we have heretofore declined to address, would not alter our decision because they did not result in substantial prejudice and therefore cannot be used to establish a denial of procedural due process. (*Keough v. Tate County Board of Education* (5th Cir. 1984), 748 F.2d 1077, 1083.) This observation applies with equal force to both the issue the Strattons raise regarding the judge's absence for a 20-minute period during an offer of proof and to the alleged violations of the

Open Meetings Act. We have thoroughly examined the record and are well acquainted with the conduct of the Strattons' counsel in the circuit court. We can fully appreciate the court's frustration and irritation with counsel's actions; however, the actual personal presence of a judge is an essential element in the constitution of a court. (*City of West Frankfort v. A.C. Marsh Lodge No. 496* (1924), 315 Ill. 32, 39.) The procedure the court employed was improper, but not prejudicial. The judge ruled the proffered evidence inadmissible before he left the courtroom. While the judge cannot certify the record as to what occurred in his absence, the Strattons do not claim that the record is inaccurate with respect to matters which transpired in the judge's absence during their offer of proof, nor do they attempt to demonstrate prejudice. The same is true of the alleged violations of the Open Meetings Act. The Strattons were given adequate notice and an opportunity to be heard and participate in the expulsion hearing. They declined. The purpose of the Act was nonetheless upheld, "having due regard for orderly administration and the public interest, as well as for the interests of the parties" (Ill. Rev. Stat. 1987, ch. 102, par. 43(c)).

For all the foregoing reasons, the judgment of the appellate court is reversed and that of the circuit court affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE RYAN took no part in the consideration or decision of this case.