**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170820

Order filed July 15, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| JAMES JOHNSON, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-17-0820 |
| | ) | Circuit No. 17-MR-350 |
| JOHN BALDWIN, CYNTHIA HARRIS, | ) | |
| CHARLES F. BEST, MICHAEL MELVIN, | ) | |
| and DEBBIE KNAUER, | ) | Honorable |
| | ) | Arkadiusz Smigielski, |
| Defendants-Appellees. | ) | Judge, Presiding. |

PRESIDING JUSTICE LYTTON delivered the judgment of the court.
Justices McDade and Wright concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court did not err in dismissing inmate's petition requesting *certiorari* review of his disciplinary proceedings.

¶ 2    Plaintiff, James Johnson, an inmate in the Department of Corrections, filed a petition for a common-law writ of *certiorari*, alleging that defendants, John Baldwin (Acting Director of the Department), Cynthia Harris (member of the Department's adjustment committee), Charles F. Best (chairperson of the Department's adjustment committee), Debbie Knauer (member of the

Department's Administrative Review Board), and Michael Melvin (chief administrative officer of Pontiac Correctional Center), deprived him of due process protections and failed to follow mandatory Department rules during disciplinary proceedings against him for violating prison rules. The trial court granted defendants' motion to dismiss with prejudice. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Plaintiff is an inmate at Pontiac Correctional Center. At the time of the disciplinary proceedings against him, he was incarcerated at Stateville Correctional Center (Stateville).

¶ 5        In April 2013, intelligence unit staff at Stateville served plaintiff with an inmate disciplinary report (IDR). The report stated that plaintiff was a member of the Gangster Disciples and that a confidential informant had conveyed to the investigative staff that plaintiff had been ordered by a Gangster Disciples leader housed in another Department facility to carry out an assault at Stateville. A second confidential informant stated that plaintiff had been appointed by the Gangster Disciples leader to the position of "Overseer" at Stateville, a high-ranking position within that organization. The IDR included information from a third confidential informant, stating that plaintiff received orders from the gang leader to carry out the assault of Stateville inmates, and from a fourth informant, stating that plaintiff was appointed by the same gang leader to sit on a Gangster Disciples committee. The report stated that the confidential informants' names were withheld due to safety and security concerns but that they were deemed reliable "due to their corroborated statements given during this investigation."

¶ 6        Based on the information contained in the IDR, the investigative unit charged plaintiff with violating Department regulations "205 (Security threat group or unauthorized organizational activity)," and "601 to 102 ([C]onspiracy to commit assault)." Plaintiff disputed the charges and refused to sign the report.

2

¶ 7    The adjustment committee convened a hearing on the charges against plaintiff. Defendant Best was the chairperson and defendant Harris was a committee member. Plaintiff pled not guilty and offered a written statement but did not request any witnesses.

¶ 8    On April 4, 2013, the adjustment committee issued its final summary report. In its report, the committee explained that plaintiff was placed on investigative status based on information that he held a leadership position with a security threat group and was using that position to conspire to attack other inmates. The committee stated that confidential source No. 1 identified plaintiff by his nickname and informed investigators that a Gangster Disciple leader issued orders to plaintiff to carry out a gang violation, meaning an assault. Confidential source No. 2 stated that the same leader appointed plaintiff as an "Overseer" at Stateville and that plaintiff was "orchestrating a planned assault" against other Stateville inmates. According to the committee, confidential informant No. 3 corroborated No. 2's statements. Finally, the committee noted that confidential informant No. 4 told the investigators that the gang leader appointed plaintiff to sit on a "five-man" committee. The adjustment committee found that the statements were reliable because each informant corroborated the others' statements.

¶ 9    After reviewing the evidence, the adjustment committee concluded that plaintiff engaged in unauthorized gang activity and had conspired to committed assault. The committee found plaintiff guilty of "601.Conspiracy/102 Assaulting Any Person" and "205 Gang or Unauthorized Organization Activity" and imposed the following penalties: (1) one year of C-grade status, (2) one year of segregation, (3) one year of commissary restrictions, and (4) six months of restricted contact visits.

¶ 10    On May 28, 2013, plaintiff filed a grievance with the Administrative Review Board (Board), claiming that the adjustment committee "failed to address the charge 601 Aiding and

Abetting, Attempt, Solicitation or Conspiracy" and that the report could not support the charge because it did not state that anyone was assaulted. The Board agreed that the adjustment committee failed to address the conspiracy charge. In an order signed by defendant Knauer, it referred the matter back to the committee with directions to address the 601 charge and, upon completion, provide an amended summary to the Board for a final review.

¶ 11 After further review, the adjustment committee served plaintiff notice of its amended decision on August 1, 2014. Three weeks later, the Board sent plaintiff a letter notifying him that the adjustment committee had corrected its final summary report to reflect the 601 charge. The Board further explained that, based on a review of the revised information and a compliance check of the due process safeguards outlined in the Department regulations, it was reasonably satisfied that plaintiff had committed the offenses and recommended that his grievance be denied.

¶ 12 On February 7, 2017, after exhausting his administrative remedies, plaintiff filed a *pro se* petition for writ of *certiorari*, asserting that defendants violated his right to due process and failed to comply with Department regulations during his disciplinary proceedings. In his complaint, plaintiff claimed that (1) one year of segregation was a "significant departure from the ordinary incidents of prison life" to require procedural due process protections under *Sandin v. Conner*, 515 U.S. 472 (1995), (2) the adjustment committee and the Board violated his due process rights throughout the disciplinary process, and (3) the committee failed to provide a detailed statement in support of their finding of guilt in violation of section 504.80(1)(2) of Illinois Administrative Code (Administrative Code) (20 Ill. Adm. Code 504.80(l)(2), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003)). Plaintiff further asserted that his due process rights were violated because he did not receive adequate notice of the charges against him and the evidence was insufficient to support a finding of guilt. At the conclusion of his petition, he acknowledged that he had already served

4

the penalties imposed. However, plaintiff maintained that he continued to suffer "adverse collateral consequences" because he had been housed in "administrative detention indefinitely" by defendant Melvin, the chief administrative officer at Pontiac. In his prayer for relief, plaintiff asked the circuit court to enter an order issuing a writ of *certiorari* and vacating the Department's disciplinary decision.

¶ 13 Defendants filed a motion to dismiss plaintiff's petition. In a memorandum of law in support of the motion, defendants argued that plaintiff's claims were moot because he had served his disciplinary terms. Defendants also claimed that dismissal was appropriate under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)), asserting that plaintiff failed to state a cause of action for a writ of *certiorari* because he did not allege facts showing a due process violation.

¶ 14 The trial court conducted a hearing and dismissed plaintiff's petition with prejudice. Plaintiff filed a motion to reconsider, which the trial court denied.

¶ 15                                            II. ANALYSIS

¶ 16 On appeal, plaintiff challenges the dismissal of his petition for a writ of *certiorari* pursuant to section 2-615 of the Code.

¶ 17 A section 2-615 motion to dismiss challenges the complaint's legal sufficiency based on defects apparent on its face. *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 19. In ruling on such a motion, "a court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Id.* The court must then determine "whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Id.* We review *de novo* a trial court's dismissal of an action under section 2-615. *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006).

5

¶ 18       A common-law writ of *certiorari* is a method of obtaining judicial review of administrative actions when the statute conferring power on the agency does not expressly adopt the Administrative Review Law (ARL) (735 ILCS 5/3-101 *et seq.* (West 2018)) and provides no other form of review. *Fillmore v. Taylor*, 2019 IL 122626, ¶ 67. The purpose of a writ is to have the entire record of the administrative tribunal brought before the court to determine, from the record alone, whether that body proceeded according to applicable law. *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 427 (1990). Because the statutes concerning prison disciplinary proceedings neither adopt the ARL nor provide another form of review, "properly pled allegations of a denial of due process in prison disciplinary proceedings are reviewable in an action for *certiorari*." *Fillmore*, 2019 IL 122626, ¶ 67.

¶ 19       However, there is no absolute right to *certiorari* review. *Stratton*, 133 Ill. 2d at 428. Issuance of a writ is within the discretion of the court and it should not issue where it would operate inequitably or unjustly. *Id.* The writ should only issue where the plaintiff can show that he or she has suffered "substantial injury or injustice" that imposes upon a constitutionally protected liberty interest. *Id.* For the purpose of granting a writ of *certiorari* in prison discipline cases, a substantial injury or injustice exists if the plaintiff can show that the punishment received "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

¶ 20       In *Fillmore*, our supreme court reviewed the disciplinary sanctions that may be imposed by the Department under section 504.80(k)(4) of the Administrative Code (20 Ill. Adm. Code 504.80(k)(4), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003)), and stated:

       "[W]ith limited exceptions, none of the disciplinary actions set forth in the Department's regulations impose atypical and significant hardship on the inmate in

6

relation to the ordinary incidents of prison life. It is not the violation of the regulation itself that gives rise to the cause of action but, rather, the interest affected by the discipline imposed. Consequently, we cannot say that the Department's regulations create a right of action that allows inmates to file suit in state court to compel correctional officers to comply with the Department's regulations.

As *Sandin* recognized, in departing from an analysis that looked to the language of a particular regulation in order to determine a prisoner's liberty interest, such an analysis was 'a good deal less sensible in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison.' *Sandin*, 515 U.S. at 481-82. *Sandin* explained that 'such regulations [are] not designed to confer rights on inmates.' [*Sandin*, 515 U.S. at 482.] Rather, in the context of prison disciplinary proceedings, a prisoner is entitled to due process protections, such as the procedural protections set forth in *Wolff*, 418 U.S. 539, only when the penalty faced by the prisoner implicates a liberty interest because it affects the nature or duration of his confinement. *Sandin*, 515 U.S. at 486-87." *Fillmore*, 2019 IL 122626, ¶¶ 47-48.

The court further noted that since *Sandin* an inmate's right to litigate disciplinary confinements " 'has become vanishingly small.' " *Id.* ¶ 56 (quoting *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997)). Thus, as a general rule, only sanctions that result in loss of good conduct credits, thereby effecting the duration of an inmate's confinement, will impose upon a liberty interest. *Id.*

¶ 21     Following *Sandin* and its reasoning, the supreme court affirmed the circuit court's dismissal in part, reversed the dismissal in part, and remanded for further proceedings. The court reversed the trial court's dismissal of the plaintiff's due process claim with prejudice because

7

plaintiff's complaint stated a claim for violation of his right to due process in the revocation of his good conduct credits. *Id.* ¶ 67. However, the court did not find the plaintiff's other punishments, including one year of segregation, imposed atypical and significant hardship on the plaintiff in relation to the ordinary incidents of prison life. See *id.* ¶ 47 (concluding that disciplinary actions of one year in C-grade, one year of segregation, one year of contact visit restrictions, and a $15 per month commissary restriction do not invoke due process because they do not impose upon a constitutionally protected liberty interest). As a result, the court affirmed the circuit court's dismissal to the extent it held that plaintiff failed to state a claim for common-law writ of *certiorari* for alleged violations of Department regulations. *Id.* ¶ 67.

¶ 22        Here, plaintiff has not alleged atypical and significant hardship. Plaintiff did not lose any good conduct credit. Further, the punishment he received (one year of C-grade status, one year of segregation, one year of commissary restrictions, and six months of contact visit restrictions) did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life any more than the same punishment imposed hardship on the plaintiff in *Fillmore*. Because plaintiff failed to allege a constitutionally protected interest, there can be no due process violation. See *Hill v. Walker*, 241 Ill. 2d 479, 485 (2011) (starting point in any due process analysis is determining whether a protectable interest is present, "for if there is not, no process is due"). Thus, pursuant to our supreme court's decision in *Fillmore*, we affirm the trial court's dismissal of plaintiff's petition for a writ of *certiorari*.

¶ 23                                    III. CONCLUSION

¶ 24        The judgment of the circuit court of Will County is affirmed.

¶ 25        Affirmed.