# Illinois Official Reports

## Supreme Court

---

**Fillmore v. Taylor, 2019 IL 122626**

---

| | |
|---|---|
| Caption in Supreme Court: | AARON P. FILLMORE, Appellee, v. GLADYSE C. TAYLOR *et al.*, Appellants. |
| Docket No. | 122626 |
| Filed | April 18, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Sangamon County, the Hon. Rudolph M. Braud, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part. Circuit court judgment affirmed in part and reversed in part. Cause remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Kaitlyn N. Chenevert, Assistant Attorney General, of Chicago, of counsel), for appellants. |
| | Chad M. Clamage, Marc R. Kadish, and Peter B. Baumhart, of Mayer Brown LLP, and Alan S. Mills, of Uptown People's Law Center, both of Chicago, for appellee. |

Justices                     JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Kilbride, Garman, and Theis concurred in the judgment and opinion.

Justice Burke specially concurred, with opinion, joined by Justice Neville.

## OPINION

¶ 1     Plaintiff, Aaron P. Fillmore, is an inmate in the custody of the Illinois Department of Corrections (Department) at the Lawrence Correctional Center in Sumner, Illinois. Plaintiff sued three officers of the Department, defendants Gladyse C. Taylor, Leif M. McCarthy, and Eldon L. Cooper, for failing to follow mandatory legal procedures before imposing discipline upon him for violating prison rules. Plaintiff sought a writ of *mandamus*, declaratory relief, and a common-law writ of *certiorari*. The circuit court of Sangamon County granted defendants' motion to dismiss the complaint with prejudice for failure to state a cause of action, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)). The Appellate Court, Fourth District, affirmed in part and reversed in part the circuit court's judgment, remanding the case for further proceedings. 2017 IL App (4th) 160309. This court then allowed the defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Nov. 1, 2017). In his response brief, plaintiff seeks cross-relief.

¶ 2                              BACKGROUND

¶ 3     On December 16, 2014, plaintiff was served with an inmate disciplinary report (IDR). The IDR indicated that plaintiff had violated Department regulation 205, "Security Threat Group or Unauthorized Organizational Activity," and regulation 206, "Intimidation or Threats." See 20 Ill. Adm. Code 504.Appendix A (Nos. 205, 206), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003). Number 205 defines "Security Threat Group or Unauthorized Organizational Activity" as

> "[e]ngaging, pressuring, or authorizing others to engage in security threat group or unauthorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat group or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational signs." *Id.*

Number 206 defines "Intimidation or Threats" as

> "[e]xpressing by words, actions, or other behavior an intent to injure any person or property that creates the reasonable belief that physical, monetary, or economic harm to that person or to another will result." *Id.*

¶ 4     The IDR recited an accumulation of incidents involving plaintiff and his active involvement within the Latin Kings security threat group. The report noted that the information had been gathered through confidential informants, searches, and monitored mail and phone calls. Specifically, the report stated that the information was

- 2 -

"evidence that [plaintiff] has assumed an active leadership role within the Latin King Nation, is actively communication [*sic*] with other High Ranking Latin King Leaders, and using that influence over other Latin King members. In February 2014 [plaintiff] was identified as Chairman for the Latin King Nation Regional Crown Council by a Confidential Informant."

¶ 5    The report indicated that plaintiff had several telephone calls with his brother, discussing numerous Latin King members at Department correctional centers and at correctional centers in other states. The IDR described the content of those phone calls in detail. Department officials also obtained three handwritten notes during cell searches that contained information regarding the Latin Kings and Latin King members. The Department officials compared the handwritten notes with handwriting samples in plaintiff's master file and determined that the notes were written by plaintiff. The handwriting samples in plaintiff's master file and the handwritten notes showed similarities in writing style and lettering.

¶ 6    The IDR set forth the contents of the handwritten notes. One of the handwritten notes stated that the investigative unit at Lawrence Correctional Center had been watching plaintiff and several other Latin King members closely and knew about the gang because an individual referred to as Kevin "told Springfield a lot." The note also stated that "[t]hese people think that I'm going to kill [Kevin] or have him killed. I want to kick him down the steps but that isn't good enough." Another handwritten note included changes to the Latin Kings' constitution and identified numerous inmates and their leadership positions within the Latin Kings.

¶ 7    The disciplinary report concluded that plaintiff had violated regulation 206 when he stated in his handwritten note that he wanted to "kick Kevin down the steps." The report also concluded that plaintiff had violated regulation 205 when he engaged in the "overt act of accepting an active leadership position within the Latin Kings Security Threat Group" and that plaintiff's active leadership position corroborated that plaintiff "continues to engage in unauthorized Security Threat Group Activity." The report stated that confidential informants' names were withheld due to safety and security concerns but that the confidential informants were deemed reliable "due to corroborating statements provided."

¶ 8    Plaintiff was served with the disciplinary report on December 16, 2014. Plaintiff sent a handwritten letter to the adjustment committee at Lawrence Correctional Center that same day requesting review of the telephone logs for the dates of the conversations referenced in the report. Plaintiff claimed that the telephone logs would show that he did not use the telephone on those dates. Plaintiff also requested that he be shown the notes that were found during the cell searches. In addition, plaintiff requested that eight inmates, one of whom was incarcerated at Menard Correctional Center, be called as witnesses. The eight inmates had been referenced in plaintiff's telephone conversations with his brother, according to the summary of those conversations set forth in the IDR. Plaintiff stated that each inmate would testify that plaintiff never ordered or directed any security threat group activity within the Department.

¶ 9    Plaintiff appeared before the adjustment committee on December 19, 2014. Defendant McCarthy was the chairperson, and defendant Cooper was a committee member. The disciplinary report was read to plaintiff. Plaintiff pled not guilty and submitted a written statement.

¶ 10    Plaintiff's written statement asserted that the allegations in the disciplinary report failed to "substantiate some evidence" for the committee to be reasonably satisfied of defendant's guilt.

Plaintiff claimed that he did not use the telephone on some of the dates reported. Further, if there were any recordings of his telephone calls, those recordings would not substantiate the charges when those recordings were played in their entirety. Plaintiff also denied authoring the notes found during the cell searches and asserted that search records would show that the notes did not come from his "cell, property, or person." Further, plaintiff pointed out that the officer who reviewed the handwritten notes was not a handwriting expert. Additionally, the disciplinary report failed to state what evidence was corroborated by the confidential informants.

¶ 11    Plaintiff also asserted that the December 16, 2014, report violated section 504.30(f) of Title 20 of the Illinois Administrative Code (20 Ill. Adm. Code 504.30(f), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003)) because the report was written more than eight days after the last date of the alleged violation. In addition, the report violated section 504.30(e) (20 Ill. Adm. Code 504.30(e), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003)) because plaintiff was not issued an investigative disciplinary report during the Department's investigation. Plaintiff's written statement concluded that he requested "to see the alleged confiscated 'notes' regarding the 12-16-14 disciplinary report, and request[ed] that [his] December 16, 2014[,] witness and document request be reviewed and considered as exculpatory evidence by the Committee."

¶ 12    The adjustment committee's final summary report noted that the IDR had been read and that plaintiff had pled not guilty and had submitted a written statement. With regard to witnesses, the report stated that no witness was requested. In the basis for decision section, the report stated that, based upon IDR reporting, plaintiff was actively participating in the Latin Kings security threat group. The report stated that information indicated that plaintiff had "assumed an active leadership role within the Latin King Nation and is actively communicating with other High Ranking Latin King Leaders." The report stated that information was provided by confidential informants, who were deemed reliable due to corroborating information but who should remain anonymous for the safety and security of the institution. The report then recited the information set forth in the IDR. As disciplinary action, the committee recommended that plaintiff be given one year of C-grade status, one year in segregation, one year of contact visit restrictions, the loss of one year of good conduct credits, and one year of a $15 per month restriction.

¶ 13    The prison's chief administrative officer concurred with the recommendation on December 29, 2014, and plaintiff was served with the final decision on January 3, 2015.

¶ 14    Plaintiff filed a grievance concerning the adjustment committee hearing on January 5, 2015. Plaintiff claimed that he received an IDR on December 16, 2014. Plaintiff then personally gave a witness and document review request to a prison counselor to give to the adjustment committee and also sent of a copy of the request to the adjustment committee via institutional mail. Plaintiff's grievance claimed that, during the hearing, the adjustment committee members stated that they had plaintiff's witness request but that corrections officer Harper, who wrote the disciplinary report, said that the witnesses would not be called. Plaintiff also claimed that defendant Cooper told plaintiff that Cooper and McCarthy were told to find him guilty and to give plaintiff "a year across the board." Plaintiff stated that he made oral objections that the adjustment committee was not impartial and that he had requested to see the notes, the search records, and the telephone logs from the dates reported but that the adjustment committee denied his request. Plaintiff set forth the specific Department regulations

he claimed had been violated during his hearing. Plaintiff contended that the adjustment committee hearing did not comport with due process and that the committee's final decision violated Department regulations. Plaintiff requested that the December 16, 2014, IDR be expunged, that the $15 per month restriction for one year be lifted, and that a new hearing be conducted in accordance with due process.

¶ 15 The prison grievance officer reviewed the facts and concluded that disciplinary regulation procedures had been followed. The grievance officer found no ground to change the decision or the disciplinary action. The grievance officer recommended that the grievance be denied based upon a review of all available information. The chief administrative officer concurred with the grievance officer's recommendation. Plaintiff then appealed to the Department's director, and the matter was referred to its administrative review board (Board).

¶ 16 The Board recommended that the grievance be denied, finding no violation of plaintiff's due process rights. The Board held that it was reasonably satisfied that plaintiff committed the offense cited in the report. Defendant Taylor, the acting director of the Department, concurred with the recommendation on August 13, 2015.

¶ 17 Having exhausted his administrative remedies, plaintiff filed his complaint in the circuit court. Count I of the complaint sought *mandamus* relief, alleging that defendants had a clear and ministerial duty to follow established federal, state, and administrative laws, rules, procedures, and regulations. Plaintiff's specific allegations were that

(1) Defendants violated section 504.60(a), which provides that "[t]he Chief Administrative Officer shall appoint one or more Hearing Investigators who shall review all major disciplinary reports." 20 Ill. Adm. Code 504.60(a), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003);

(2) Defendants violated section 504.30(f), which provides that "[s]ervice of a disciplinary report upon the offender shall commence the disciplinary proceeding. In no event shall a disciplinary report *** be served upon an adult offender more than [eight] days *** after the commission of an offense or the discovery thereof unless the offender is unavailable or unable to participate in the proceeding." 20 Ill. Adm. Code 504.30(f), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003);

(3) Defendants violated section 504.80(h)(4) by failing to provide a written reason for the denial of plaintiff's request for the in-person testimony of witnesses at his disciplinary hearing. 20 Ill. Adm. Code 504.80(h)(4), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003);

(4) Defendants violated section 504.30(e) because the Department never placed plaintiff under investigation. 20 Ill. Adm. Code 504.30(e), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003);

(5) Defendants violated section 504.80(g), which states that the "Committee shall consider all material presented that is relevant to the issue of whether or not the offender committed the offense," by failing to independently review the notes and the telephone logs and recordings. 20 Ill. Adm. Code 504.80(g), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003);

(6) Defendants violated section 504.80(f)(1), which states that the "offender may *** produce any relevant documents in his or her defense," when defendants denied plaintiff's requests, both before and during the disciplinary hearing, to see the notes he

had allegedly written. 20 Ill. Adm. Code 504.80(f)(1), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003);

(7) Defendants lacked impartiality and improperly refused to recuse themselves from the adjustment committee after they were directed by higher up prison authorities to find plaintiff guilty and impose specified penalties;

(8) Defendants violated section 504.80(d), which provides that when an offender objects to a member of the committee based on a lack of impartiality, the committee "shall document the basis of the objection and the decision in the Adjustment Committee summary." 20 Ill. Adm. Code 504.80(d), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003). Plaintiff alleged he made a timely objection to the committee members' lack of impartiality, but the committee failed to document that objection; and

(9) Defendants failed to include a summary of plaintiff's written statement in its final summary report, in violation of section 504.80(*l*)(1). 20 Ill. Adm. Code 504.80(*l*)(1), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003).

¶ 18    Plaintiff claimed that defendants McCarthy and Cooper violated Department regulations by "failing to disclose known exculpatory evidence, failing to review alleged 'notes,' failing to call [his] witnesses, failing to consider all relevant material before determining guilt, failing to state reasons for disregarding exculpatory evidence, [and] failing to review telephone logs and recordings." With regard to defendant Taylor, plaintiff alleged that Taylor failed to investigate plaintiff's grievance issues as mandated by sections 3-2-2(h) and 3-8-8 of the Unified Code of Corrections (730 ILCS 5/3-2-2(h), 3-8-8 (West 2016)), as well as Department regulation 504.85(b)(f) (20 Ill. Adm. Code 504.85(b)(f), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003)).

¶ 19    Count II of plaintiff's complaint raised a claim for a common-law writ of *certiorari*, contending that defendants McCarthy and Cooper violated Department regulations before, during, and after the IDR hearing. Plaintiff again complained of defendants' failure, both before and during the disciplinary hearing, to produce the handwritten notes allegedly written by plaintiff, in violation of section 504.80(f)(1) of the Department regulations. Plaintiff also complained of the refusal of committee members to recuse themselves for lack of impartiality, and again alleged that the Department violated section 504.30(f) of its regulations, on the basis that the IDR was written more than eight days after the final evidentiary incident listed in the IDR. Plaintiff further alleged that defendants McCarthy and Cooper violated plaintiff's due process rights by relying on Offender Tracking System (OTS) evidence to determine guilt and to punish him when no such OTS evidence was alleged against him.

¶ 20    Count III of plaintiff's complaint sought a declaratory judgment that defendants McCarthy and Cooper violated plaintiff's due process rights in revoking plaintiff's good conduct credits.

¶ 21    As noted, the circuit court granted defendants' motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure. Defendants argued that plaintiff could not rely on violations of the Illinois Administrative Code to establish his clear right to relief, citing *Ashley v. Snyder*, 316 Ill. App. 3d 1252 (2000). *Ashley* held that prison regulations were never intended to confer rights on inmates or to serve as a basis for constitutional claims. *Id.* at 1258. In support of its holding, *Ashley* cited *Sandin v. Conner*, 515 U.S. 472 (1995). The circuit court agreed with defendants and held that plaintiff had no right to the relief requested and that plaintiff had received all process that was due.

¶ 22    On appeal, the appellate court affirmed the circuit court's judgment in part and reversed in part. The appellate court first addressed whether plaintiff stated a cause of action for *mandamus*, declaratory judgment, or common-law writ of *certiorari*. The appellate court found that plaintiff had stated a cause of action for *mandamus* on two of his claims: that the adjustment committee had a clear, nondiscretionary duty to document plaintiff's objection to the committee members' lack of impartiality, but failed to do so in violation of section 504.80(d) of the Department regulations, and that the adjustment committee failed to include a summary of plaintiff's written statement in its final summary report, in violation of section 504.80(*l*)(1) of the Department regulations.

¶ 23    With regard to declaratory judgment, the appellate court found that plaintiff failed to state a cause of action. The appellate court noted that it had held that an action for common-law writ of *certiorari*, rather than an action for declaratory judgment, was the correct means to seek review of the penalties imposed in a prison disciplinary proceeding.

¶ 24    The appellate court then found that plaintiff had stated a claim for common-law writ of *certiorari* with regard to two claims. First, plaintiff had alleged a violation of section 504.80(f)(1) of the Department regulations, which provides that an offender may produce any relevant documents in his or her defense. Plaintiff contended that he had twice requested to be shown the notes he had allegedly written, and which were cited as evidence against him, but the committee failed to produce those notes, without explanation. The appellate court held that the alleged violation of section 504.80(f)(1) of the Department regulations was significant and justified issuance of the common-law writ of *certiorari*.

¶ 25    Second, plaintiff alleged that the committee members should have recused themselves because they had been directed by higher-up prison authorities to find plaintiff guilty and to impose particular penalties. The appellate court concluded that, given the factual allegations in the complaint, the impartiality of the administrative tribunal was sufficiently in question that good cause existed for the issuance of a writ of *certiorari*.

¶ 26    The appellate court then addressed the circuit court's reliance on *Ashley* in dismissing plaintiff's complaint. The appellate court agreed that the *Ashley* court had properly disposed of the constitutional and statutory claims before it in that case. However, the *Ashley* court added in an "epilogue" that

> "[p]rison regulations, such as those contained in the inmate orientation manual relied on here, were *never* intended to confer rights on inmates or serve as a basis for constitutional claims. *Sandin*, 515 U.S. at 482 ***. Instead, Illinois [Department] regulations, as well as the Unified Code, were designed to provide guidance to prison officials in the administration of prisons. In addition, Illinois law creates no more *rights* for inmates than those which are constitutionally required." (Emphases in original.) *Ashley*, 316 Ill. App. 3d at 1258.

¶ 27    The *Ashley* court then concluded inmates have "a constitutional right to adequate shelter, food, drinking water, clothing, sanitation, medical care, and personal safety," as well as "a reasonable right of access to courts and a right to a reasonable opportunity to exercise religious freedom under the first amendment." *Id.* at 1258-59. Beyond those rights, however, inmates possess no other rights, only privileges. *Id.* at 1259.

¶ 28    The appellate court in the instant case declined to follow the epilogue in *Ashley* to the extent *Ashley* suggested that inmates could not sue to compel correctional officers to perform

nondiscretionary duties set forth in the Department's regulations. 2017 IL App (4th) 160309, ¶ 98. The appellate court agreed with the *Ashley* court that prison regulations such as those represented by the inmate orientation manual in *Ashley* conferred no rights on inmates, as bulletins, handbooks, and similar materials were not the Illinois Administrative Code. *Id.* However, while a procedural manual was designed to provide guidance, the Illinois Administrative Code was different. *Id.* The Illinois Administrative Code has the force and effect of law. *Id.* The appellate court stated that it had always been the law that the Department had to follow its own promulgated regulations in prison disciplinary proceedings. *Id.*

¶ 29    Plaintiff filed a petition for rehearing on July 19, 2017, contending that he had stated a claim for *mandamus* when he alleged that the Department violated section 504.60(a) of its regulations, because the Department did not require a hearing investigator's review of the IDR. The circuit court denied plaintiff's petition on July 26, 2017. On August 2, 2017, within 21 days of the appellate court's judgment, defendants electronically submitted their petition for rehearing. On August 8, 2017, defendants' petition was rejected and not filed. The comment explaining the reason for the rejection was, "rejected pursuant to S. Ct. R. 367(e). Limitation on Petitions in the Appellate Court. When the Appellate Court has acted upon a petition for rehearing and entered judgment on rehearing no further petitions for rehearing shall be filed in that court."

¶ 30    As noted, this court subsequently allowed defendants' petition for leave to appeal. In his response brief, plaintiff seeks cross-relief challenging the appellate court's finding that he was not entitled to *mandamus* or a common-law writ of *certiorari* on several of his allegations.

¶ 31                                    ANALYSIS

¶ 32    As a preliminary matter, we note that defendants have appealed the appellate court's order rejecting their petition for rehearing, contending that the petition was timely filed. Defendants argue that the appellate court misconstrued Illinois Supreme Court Rule 367, which provides that "[w]hen the Appellate Court has acted upon a petition for rehearing *and entered judgment on rehearing*, no further petitions for rehearing shall be filed in that court." (Emphasis added.) Ill. S. Ct. R. 367(e) (eff. Aug. 15, 2016). Defendants maintain that the appellate court erroneously rejected their timely petition for rehearing on the basis that it had already denied plaintiff's petition for rehearing. According to defendants, the appellate court mistakenly believed that, in denying plaintiff's petition, it had entered judgment on rehearing. Defendants disagree, contending that in denying plaintiff's petition for rehearing, the appellate court did not thereby enter judgment on that petition. Accordingly, defendants were not precluded from filing their own petition for rehearing within 21 days of the court's judgment.

¶ 33    Although defendants raise this issue on appeal, they do not seek the relief that would be warranted should this court rule in their favor: a remand to the appellate court with directions to file and rule on defendants' petition for rehearing. Defendants maintain that an order remanding the case to the appellate court would be a waste of judicial resources, as defendants would again seek review of this case on the merits from this court should the appellate court deny the petition. Defendants suggest that because the case has been fully briefed, this court should instead proceed on the merits.

¶ 34    Because defendants are not seeking the relief to which they would be entitled should this court rule in their favor on this issue, we decline to address the issue. As plaintiff points out,

this court does not render advisory opinions or decide issues that would not result in appropriate relief. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. We therefore limit our analysis to defendants' second issue on appeal: whether the appellate court properly found that plaintiff had stated claims for *mandamus* and common-law writ of *certiorari*.

¶ 35    The appeal in this case arises from the dismissal of plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure. A section 2-615 motion to dismiss tests the legal sufficiency of the complaint. The question on review is whether the allegations of the complaint, taken as true and viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Cowper v. Nyberg*, 2015 IL 117811, ¶ 12. A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recover. *Id.* The standard of review is *de novo*. *Id.*

¶ 36    As discussed, in addressing this case, the appellate court first considered whether plaintiff's alleged violations of the Department's regulations stated claims for *mandamus*, for declaratory judgment, and for common-law writ of *certiorari*. With regard to the *mandamus* count, the appellate court looked to each challenged regulation to determine whether the regulation required the exercise of judgment or discretion or if it was purely ministerial in nature. Likewise, with regard to the count seeking common-law writ of *certiorari*, the appellate court looked to regulations set forth in plaintiff's complaint to determine whether defendants had failed to comply with those regulations, arguably causing substantial injury or injustice to plaintiff. As noted, the appellate court held that an action for common-law writ of *certiorari*, rather than an action for declaratory judgment, was the correct means to seek review of the penalties imposed in a prison disciplinary hearing. Plaintiff does not seek review of the appellate court's finding concerning his declaratory judgment action.

¶ 37    After finding the plaintiff had stated claims for *mandamus* and for writ of *certiorari*, the appellate court then addressed the circuit court's order granting defendants' motion to dismiss based upon *Ashley*, 316 Ill. App. 3d 1252. As noted, the appellate court disagreed with *Ashley* to the extent that *Ashley* suggested that inmates could not sue to compel correctional officers to perform nondiscretionary duties set forth in the Department's regulations.

¶ 38    In contrast to the appellate court, we find that our analysis must begin with a determination of whether the Department regulations at issue create judicially enforceable rights for inmates. It is only if those regulations create judicially enforceable rights for inmates that we consider whether plaintiff was entitled to *mandamus* or writ of *certiorari* based upon defendants' alleged failure to comply with those regulations.

¶ 39    In *Sandin*, 515 U.S. 472, the Court reexamined the circumstances under which state prison regulations afforded inmates a liberty interest protected by the due process clause. *Sandin* noted that its decision in *Wolff v. McDonnell*, 418 U.S. 539 (1974), had addressed state-created liberty interests and had contributed to "the landscape of prisoners' due process" through "its intricate balancing of prison management concerns with prisoners' liberty in determining the amount of process due." *Sandin*, 515 U.S. at 478. The inmates in *Wolff* challenged the decision of prison officials to revoke good time credits, earned pursuant to state statute, without adequate procedures. *Wolff*, 418 U.S. at 553. *Wolff* held that the due process clause itself did

not create a liberty interest in credit for good behavior but that the statutory provision created a liberty interest in a shortened sentence that resulted from the good time credits. *Id.* at 557.

¶ 40    Subsequent to *Wolff*, the Court addressed a claim by inmates seeking injunctive relief, declaratory relief, and damages, by reason of transfer from a medium security prison to a maximum security facility. *Meachum v. Fano*, 427 U.S. 215 (1976). The *Meachum* Court held that the due process clause does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner and that the due process clause itself did not create a liberty interest in prisoners to be free from intrastate prison transfers. *Id.* at 224-25. *Meachum* distinguished *Wolff*, noting that the protected liberty interest in good time credit in *Wolff* had been created by state law, while there was no comparable state law in the case before it that stripped officials of the discretion to transfer prisoners to alternative facilities. *Id.* at 228.

¶ 41    *Sandin* observed that, because *dictum* in *Meachum* distinguished *Wolff* by focusing on whether state action was mandatory or discretionary, the Court in later cases began laying greater emphasis on a "somewhat mechanical dichotomy" that focused on whether state action was mandatory or discretionary, in defining state created liberty interests. *Sandin*, 515 U.S. at 479. This shift in analysis began in *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979), and was made explicit in *Hewitt v. Helms*, 459 U.S. 460 (1983). *Hewitt* found that inmates confined to administrative segregation had no right to remain in the general population by virtue of the due process clause. *Id.* at 468. However, the *Hewitt* Court examined whether the State had created a liberty interest by virtue of its prison regulations, asking whether the State had gone beyond issuing mere procedural guidelines and had used "language of an unmistakably mandatory character" such that the incursion on liberty would not occur "absent specified substantive predicates." *Id.* at 471-72.

¶ 42    As a result of the *Greenholtz* and *Hewitt* decisions, inmates no longer had to rely on a showing that they had suffered a " ' "grievous loss" ' of liberty retained even after sentenced to terms of imprisonment." *Sandin*, 515 U.S. at 480 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The Court thereafter "wrestled with the language of intricate, often rather routine prison guidelines to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." *Id.* at 480-81. *Sandin* explained that, in "shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.* at 481. Moreover, in response, courts drew negative inferences from mandatory language in the text of prison regulations. *Id.*

¶ 43    *Sandin* recognized that such a conclusion might make sense in the ordinary course of construing a statute defining rights and remedies available to the general public but made a good deal less sense "in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison." *Id.* at 481-82. The Court recognized two undesirable effects of such an analysis. First, it created "disincentives for States to codify prison management procedures in the interest of uniform treatment." *Id.* at 482. Second, it led to the involvement of the federal courts in the day-to-day management of prisons, running counter to the view that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Id.*

¶ 44 Based upon those concerns and considerations, the *Sandin* Court stated that it was appropriate to return to the due process principles established and applied in *Wolff* as well as *Meachum*. The Court therefore held that

> "States may under certain circumstances create liberty interests which are protected by the Due Process Clause. [Citation.] But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force [citations], nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84.

¶ 45 Following *Sandin*, the United States Supreme Court addressed whether assignment to the Ohio State Penitentiary, a supermaximum security prison, imposed an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209 (2005). *Wilkinson* recognized that the constitution itself did not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement, but a liberty interest in avoiding particular conditions of confinement might arise from state policies or regulations, subject to the important limitations set forth in *Sandin*. *Id.* at 221-22. *Wilkinson* reiterated that

> "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.' " *Id.* at 223 (quoting *Sandin*, 515 U.S. at 484).

¶ 46 With the preceding in mind, we look to the disciplinary actions the committee might recommend if it finds the offender did commit the offense or a lesser offense for which the elements were included in the original charge. The committee might:

> "A) Reprimand the offender.
>
> B) Suspend or restrict one or more privileges of the offender for a specific period of time.
>
> C) Reduce the offender's grade or level.
>
> D) Change the offender's program.
>
> E) Change the offender's housing assignment or transfer the individual to another correctional facility.
>
> F) Revoke the offender's statutory good time or good conduct credits.
>
> G) Increase the offender's security classification.
>
> H) Place the offender in segregation or confinement. ***
>
> I) Require the offender to make restitution.
>
> J) Revoke the offender from a transition center. ***
>
> K) Require forfeiture of items of contraband used in the offense or possessed in violation of this Part.
>
> L) Delay referral of a juvenile offender to the Prisoner Review Board for recommended parole." 20 Ill. Adm. Code 504.80(k)(4), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003).

¶ 47    It is clear from the preceding that, with limited exceptions, none of the disciplinary actions set forth in the Department's regulations impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. It is the not the violation of the regulation itself that gives rise to the cause of action but, rather, the interest affected by the discipline imposed. Consequently, we cannot say that the Department's regulations create a right of action that allows inmates to file suit in state court to compel correctional officers to comply with the Department's regulations.

¶ 48    As *Sandin* recognized, in departing from an analysis that looked to the language of a particular regulation in order to determine a prisoner's liberty interest, such an analysis was "a good deal less sensible in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison." *Sandin*, 515 U.S. at 481-82. *Sandin* explained that "such regulations [are] not designed to confer rights on inmates." *Id.* at 482. Rather, in the context of prison disciplinary proceedings, a prisoner is entitled to due process protections, such as the procedural protections set forth in *Wolff*, 418 U.S. 539, only when the penalty faced by the prisoner implicates a liberty interest because it affects the nature or duration of his confinement. *Sandin*, 515 U.S. at 486-87.

¶ 49    We see no reason to depart from the *Sandin* analysis in our review of Department regulations. We need not look to the language of each regulation to determine whether that particular regulation creates a right of action. The concerns animating the Court in *Sandin* in rejecting such an analysis apply equally in this court. To depart from the *Sandin* analysis in this court would likewise create disincentives for the State to codify prison management procedures and would lead to the involvement of state courts in day-to-day management of prisons. For that reason, we find that the *Ashley* court was correct in stating that the Department regulations create no more rights for inmates than those that are constitutionally required.

¶ 50    The appellate court in this case, in departing from *Ashley*, stated that

"[i]t had always been the law that, in prison disciplinary proceedings, the Department had to follow its own promulgated regulations (*Clayton-El v. Lane*, 203 Ill. App. 3d 895, 899 (1990); *Thompson [v. Lane]*, 194 Ill. App. 3d [855], 860 [(1990)]; *People ex rel. Yoder v. Hardy*, 116 Ill. App. 3d 489, 495 (1983)) and that inmates could sue to compel correctional officers to perform nondiscretionary duties set forth in the Department's regulations (*West [v. Gramley]*, 262 Ill. App. 3d [552], 557 [(1994)]; *Shea [v. Edwards]*, 221 Ill. App. 3d [219], 221 [(1991)]; *Taylor [v. Franzen]*, 93 Ill. App. 3d [758], 765 [(1981)])." 2017 IL App (4th) 160309, ¶ 98.

¶ 51    The cases cited by the appellate court in support of its analysis departing from *Ashley*, however, all predate the *Sandin* decision. Moreover, five of the six cases cited by the appellate court concerned disciplinary proceedings where the inmate lost statutory good time or good conduct credits, which, as discussed *infra*, does implicate a constitutional liberty interest. See *Shea*, 221 Ill. App. 3d 219; *Clayton-El*, 203 Ill. App. 3d 895; *Thompson*, 194 Ill. App. 3d 855; *Hardy*, 116 Ill. App. 3d 489; *Taylor*, 93 Ill. App. 3d 758. Although the courts in those cases generally stated that the Department is bound to follow its own rules, those decisions did not specifically address whether any failure to follow Department regulations created an enforceable right.

¶ 52    The sixth case, *West*, held that the circuit court had erred in determining the merits of the plaintiff inmate's complaint in deciding the defendants' motion to dismiss. 262 Ill. App. 3d at

557-58. In so holding, the *West* court noted that prisoners may file a complaint for *mandamus* to compel Department officials to perform under the rules adopted by the Department but did not discuss whether the regulations at issue created an enforceable right. *Id.* at 557. Rather, the *West* court applied a *Hewitt*-type analysis, which focused on whether state action was mandatory or discretionary.

¶ 53　　It is worth noting that the appellate court in this case also applied a *Hewitt*-type analysis, looking to the language in each challenged regulation to determine whether the state action at issue was mandatory or discretionary. *Sandin* expressly disavowed that analysis and instead returned to an analysis that looked not to the language of the regulation concerning restrictive conditions of confinement but rather to the nature of those conditions in relation to the ordinary incidents of prison life. Having found that the same analysis applies in this court, we find that the appellate court erred in declining to follow the *Ashley* court on this issue.

¶ 54　　Our holding does not mean that prison officials have *carte blanche* to ignore Department regulations concerning disciplinary proceedings. The Department is required to follow its promulgated regulations, and an inmate may appeal the disciplinary proceedings through the grievance procedures set forth in subpart F of part 504. See 20 Ill. Adm. Code 504.Subpart F, amended at 27 Ill. Reg. 6214 (eff. May 1, 2003). However, as stated, it is not the violation of the Department regulations itself that gives rise to a cause of action but, rather, the interest affected by the discipline imposed for that violation.

¶ 55　　Consequently, to the extent that plaintiff bases his claims on violations of Department regulations governing his disciplinary proceedings, we find that plaintiff's complaint fails to state a cause of action. The appellate court's order, finding that plaintiff stated a claim for *mandamus* based upon violations of sections 504.80(d) and 504.80(*l*)(1) of the Department regulations and for common-law writ of *certiorari* based upon violations of section 504.80(f)(1), as well as defendants' failure to recuse themselves from the proceedings, is therefore reversed.

¶ 56　　We note, however, that plaintiff's complaint does allege that defendants violated his due process rights when they revoked his good conduct credits. Since *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). Thus, "[a]s a general rule, only sanctions which result in loss of good conduct time credits for inmates who are eligible for release on mandatory supervision or which otherwise directly and adversely affect release on mandatory supervision will impose upon a liberty interest." *Spicer v. Collins*, 9 F. Supp. 2d 673, 685 (E.D. Tex. 1998).[1]

¶ 57　　When a prison disciplinary hearing may result in the loss of a prisoner's good conduct credits, *Wolff* held that the inmate must receive (1) advance written notice of the disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense, and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. 418 U.S. at 563-67. In addition, the findings of the prison disciplinary board must be supported by some

---

[1]Plaintiff also contends that inmates have a right to require prison officials to comply with the Department's regulations when officials are imposing serious punishment such as solitary confinement for a year. Plaintiff asserts in a footnote in his brief that his year of confinement in segregation implicated a federally protected liberty interest. Plaintiff, however, did not raise this allegation in his complaint, so it is not properly before us.

evidence in the record. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985). Ascertaining whether that standard has been met does not require examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence. *Id.* at 455. Rather, the relevant question is whether there is any evidence in the record that could support the disciplinary board's conclusion. *Id.* at 455-56.

¶ 58    Upon review, we find that the plaintiff's disciplinary hearing in this case failed to meet all of the due process requirements under *Wolff*. With regard to the first due process requirement, plaintiff was served with the IDR on December 15, 2014, and the adjustment committee hearing took place on December 19, 2014. The IDR consisted of five pages setting forth the charges and evidence against plaintiff. Plaintiff therefore did receive advanced written notice of the charges against him.

¶ 59    Plaintiff's disciplinary hearing also complied with the third due process requirement set forth in *Wolff*. The adjustment committee provided plaintiff with its written final summary report setting forth the basis for its decision, including the evidence relied upon and the reasons for the disciplinary action imposed.

¶ 60    Plaintiff, however, sufficiently pled that defendants' denial of plaintiff's witnesses and documentary evidence without an explanation violated plaintiff's due process rights. Plaintiff's complaint alleged that he timely and properly submitted a witness request slip to the adjustment committee via institutional mail, requesting witnesses and exculpatory evidence. In addition, plaintiff alleged that he gave a duplicate witness request slip to correctional counselor Ray to give to the adjustment committee. At the disciplinary hearing, plaintiff again asked to see the notes described in the IDR. Plaintiff also asked the committee to review the notes, review the inmate telephone logs in question and listen to the telephone recordings, and call his witnesses. Plaintiff's complaint alleged that defendant Cooper responded that the prison official who wrote the IDR directed the committee not to call any of plaintiff's witnesses.

¶ 61    The adjustment committee's final summary report makes no reference to plaintiff's request to review documents and states that no witness was requested. *Wolff* recognized that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Wolff*, 418 U.S. at 566. The Court also recognized that "it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.* However, the Court declined to prescribe that courts do so, recognizing that

> "[t]he operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents." *Id.* at 566-67.

¶ 62    Eleven years after the *Wolff* decision, the Court again reiterated that there was no need for the Court to prescribe as constitutional doctrine that the disciplinary board must state in writing, at the time of the hearing, its reasons for refusing to call a witness, nor was the due

process clause satisfied only when the administrative record contained support or reasons for the board's refusal. *Ponte v. Real*, 471 U.S. 491, 496 (1985). Nonetheless, the Court concluded that

> "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it 'later.'" *Id.* at 497.

¶ 63 *Ponte* recognized that the requirement that prison officials give contemporaneous reasons for denying witnesses and evidence might impose an additional administrative burden that would detract from the officials' ability to perform the principal mission of the institution and that the officials might prefer to deal with later court challenges on a case-by-case basis. *Id.* at 497-98. *Ponte* recognized that the constitution permits either approach. Nonetheless, the Court explained:

> "[T]o hold that the Due Process Clause confers a circumscribed right on the inmate to call witnesses at a disciplinary hearing, and then conclude that no explanation need ever be vouched for the denial of that right, either in the disciplinary proceeding itself or if that proceeding be later challenged in court, would change an admittedly circumscribed right into a privilege conferred in the unreviewable discretion of the disciplinary board. We think our holding in *Wolff* meant something more than that." *Id.* at 498-99.

*Ponte* allowed that in certain circumstances, given prison security or similar paramount interests, a court might in the first instance allow a prison official's justification for refusal to call witnesses to be presented to the court *in camera* but found no reason for going further and requiring an inmate to produce evidence of which he would rarely be in possession. *Id.* at 499.

¶ 64 In the instant case, defendants did not give reasons for denying plaintiff's witnesses and evidence during the disciplinary proceeding, nor did defendants explain that decision "later." In this court, defendants for the first time set forth reasons why plaintiff's witnesses and document requests were denied. Those reasons may justify the denial of plaintiff's request for witnesses and evidence at his disciplinary hearing and can be raised by defendants on remand. As currently before us, however, none of these reasons appear in the record, either at plaintiff's disciplinary hearing or in the form of affidavits or other evidence submitted during plaintiff's later court challenge to his disciplinary proceeding. Plaintiff, therefore, has sufficiently pled that defendants' denial of plaintiff's witness and evidence requests, without explanation, violated plaintiff's right to due process.

¶ 65 Plaintiff also points out that he has a due process right to appear before an impartial decision maker. See *Wolff*, 418 U.S. at 570-71. Plaintiff's complaint alleged that the adjustment committee members had been told to find him guilty and to give him "a year across the board." Plaintiff further alleged that he made an oral objection at his disciplinary hearing that the adjustment committee was not impartial. Defendants acknowledge that plaintiff has a due process right to appear before a disciplinary committee composed of impartial individuals but claim that plaintiff failed to overcome the presumption of impartiality.

¶ 66    We disagree. Because this appeal arises from the dismissal of plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure, the allegations of plaintiff's complaint must be taken as true, and the complaint must be construed in a light most favorable to plaintiff. *Cowper*, 2015 IL 117811, ¶ 12. All the facts apparent from the face of the pleadings, as well as the exhibits attached thereto, must be considered, and a cause of action should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proven that would entitle plaintiff to recovery. *Id.* Based upon that standard of review, plaintiff's allegation that he was denied his right to appear before a disciplinary committee composed of impartial individuals must be taken as true and is sufficient to state a claim for violation of plaintiff's right to due process.

¶ 67    Because plaintiff's complaint has stated a claim for violation of his right to due process in the revocation of his good conduct credits, we find that plaintiff's complaint stated a claim for common-law writ of *certiorari* with regard to his due process claims. A common-law writ of *certiorari* is the general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)) and the act provides for no other form of review. *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996). The statutory provisions pertaining to prison disciplinary procedures neither adopt the Administrative Review Law nor provide any other method of judicial review. See 730 ILCS 5/3-8-7 to 3-8-10 (West 2014). Accordingly, properly pled allegations of a denial of due process in prison disciplinary proceedings are reviewable in an action for *certiorari*. We therefore reverse the circuit court's judgment dismissing plaintiff's due process claims with prejudice and remand to the circuit court for further proceedings on that claim.

¶ 68    Finally, we note that plaintiff has filed a cross-appeal challenging the appellate court's finding that plaintiff was not entitled to *mandamus* or a writ of *certiorari* based upon his allegations that defendants violated sections 504.60(a), 504.80(h)(4), 504.80(f)(1), 504.80(b), and 504.80(d) of the Department regulations. We have already rejected the argument that Department regulations have the force and effect of law, which would allow plaintiff to bring a cause of action for a violation of those regulations. Accordingly, we need not again consider whether plaintiff was entitled to relief based upon defendants' alleged failure to follow those regulations. We therefore affirm that portion of the appellate court's order finding that plaintiff failed to state a claim for *mandamus* or a writ of *certiorari* with regard to those regulations.

¶ 69                                    CONCLUSION

¶ 70    For all the foregoing reasons, we affirm the appellate court's finding to the extent it held that plaintiff failed to state a claim for *mandamus* or common-law writ of *certiorari* for alleged violations of Department regulations. We reverse that portion of the appellate court's order finding that plaintiff did state claims for *mandamus* and common-law writ of *certiorari* based upon alleged violations of other Department regulations. We affirm the circuit court's finding dismissing plaintiff's complaint with prejudice pursuant to section 2-615 of the Code of Civil Procedure based upon violations of the Department's regulations, but we reverse the circuit court's order with regard to plaintiff's claim that defendants violated his right to due process in revoking his good conduct credits and remand the case to the circuit court for further

proceedings consistent with this opinion.

¶ 71    Appellate court judgment affirmed in part and reversed in part.

¶ 72    Circuit court judgment affirmed in part and reversed in part.

¶ 73    Cause remanded.

¶ 74    JUSTICE BURKE, specially concurring:

¶ 75    The plaintiff, Aaron P. Fillmore, is an inmate serving a term of imprisonment in an Illinois prison. In 2014, he was subject to a disciplinary proceeding before a prison administrative tribunal. At the conclusion of the proceeding, he received the following punishments: the revocation of one year of good conduct credits, one year in segregation, one year of contact visit restrictions, one year of restricting his commissary expenditures to $15 per month, and one year of C-grade status, which meant that plaintiff was denied certain prison privileges (see 20 Ill. Adm. Code 504.130, amended at 27 Ill. Reg. 6214 (eff. May 1, 2003)). Plaintiff sought administrative relief, which was denied. He then filed, *pro se*, a three-count document in the circuit court of Sangamon County seeking judicial relief from his prison discipline. Count I sought a common-law writ of *mandamus*, count II sought a common-law writ of *certiorari*, and count III sought declaratory relief.[2] The circuit court denied plaintiff relief on all three counts. The appellate court affirmed in part and reversed in part (2017 IL App (4th) 160309), and this appeal followed.

¶ 76    The majority, in addressing plaintiff's request for a writ of *certiorari*, takes an unusual first step. Instead of beginning its analysis with the controlling principles of *certiorari* review, the majority begins with the United States Supreme Court's decision in *Sandin v. Connor*, 515 U.S. 472 (1995). *Supra* ¶ 39. This is unusual because *Sandin* is not a *certiorari* case. *Sandin* addresses the circumstances under which an inmate challenging a prison disciplinary proceeding may bring a due process claim under 42 U.S.C. § 1983. Unlike a petition for writ of *certiorari*, which is a means of obtaining judicial review of a lower tribunal's decision, a complaint brought under section 1983 is an independent, original cause of action; it is not a review proceeding. *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 428 (1990) (citing *Hameetman v. City of Chicago*, 776 F.2d 636, 640 (7th Cir. 1985)). On its face, then, *Sandin* has nothing to do with the standards that govern the issuance of a writ of *certiorari*. See *Sandin*, 515 U.S. at 487 n.11. Moreover, the majority repeatedly refers to plaintiff's request for *certiorari* review as a "cause of action" and ultimately concludes that plaintiff has failed to state a "cause of action" for *certiorari*. See *supra* ¶ 55. This language makes it unclear if the majority is describing the pleading standard for an independent, original cause of action or *certiorari* review. Ultimately, the majority's reliance on *Sandin* is confusing because the majority opinion never explains how *Sandin* fits within the framework of our state *certiorari* law.

¶ 77    This court's analysis of whether plaintiff is entitled to *certiorari* review must begin with *certiorari* law. The common-law writ of *certiorari* is a means by which a petitioner who is otherwise without an avenue of appeal may obtain limited review over action taken by a lower court or a lower tribunal exercising quasi-judicial functions. *Stratton*, 133 Ill. 2d at 427. The

---

[2]Plaintiff does not contend in this court that he is entitled to declaratory relief.

purpose of the writ is to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, whether the tribunal proceeded according to applicable law. If the circuit court, on the return of the writ, determines from the record that the inferior tribunal proceeded according to law, the writ is quashed; however, if the circuit court determines the tribunal did not comply with the law, the judgment and proceedings shown by the return will be quashed. *Id.* Where the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)) has not been expressly adopted, the actions of agencies and tribunals exercising administrative functions may be subject to review by writ of *certiorari*. *Stratton*, 133 Ill. 2d at 427.

¶ 78    Importantly, there is no absolute right to *certiorari* review. *Id.* at 428. The purpose of the writ is to prevent injustice, and therefore, the writ should issue only if the petitioner can show that he or she has suffered "substantial injury or injustice." *Id.* Further, the writ should not issue where it would operate inequitably or unjustly. *Id.*

¶ 79    In any individual case, the issuance of a writ of *certiorari* is a matter within the discretion of the court. *Id.* Moreover, because the writ of *certiorari* is a creature of common law and the scope of *certiorari* review is a subject left entirely to the judiciary, this court may, in appropriate circumstances, limit the reach of the writ as a matter of law. *Tanner v. Court of Claims*, 256 Ill. App. 3d 1089, 1092 (1994) (citing *Deslauries v. Soucie*, 222 Ill. 522, 524 (1906)). It is on this basis that *Sandin* is relevant to this case.

¶ 80    As the majority notes, *Sandin* held that, to determine whether there is a protected, state-created liberty interest with respect to certain conditions of confinement, courts must look to whether the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84. *Sandin* based this result, in part, on concerns that arise solely in prison discipline cases. Prison is a unique and volatile environment, and courts should afford appropriate deference and flexibility to state officials that are charged with managing that environment. In addition, as a general matter, courts should not be involved in the day-to-day operation of prisons, and it is thus unwise to permit court challenges to every instance of minor prison discipline, many of which result in only the revocation of prison privileges.

¶ 81    These same concerns support a limitation on *certiorari* review in prison discipline cases. And it is on the basis of these concerns that the *Sandin* standard may be incorporated into our state *certiorari* law. This is effectively what the majority has done in this case. Thus, as a matter of law, in prison discipline cases, a "substantial injury or injustice" (*Stratton*, 133 Ill. 2d at 428) will only exist for purposes of granting a writ of *certiorari* if the prisoner can show that the punishment received "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" (*Sandin*, 515 U.S. at 483-84).

¶ 82    Here, plaintiff has alleged an atypical and significant hardship in that, as a result of his disciplinary proceeding, one year of his good conduct credits have been revoked. Also, plaintiff has sufficiently alleged, for purposes of bringing the record of the disciplinary proceeding before the circuit court, that the revocation was done in violation of principles of due process and governing administrative regulations and was therefore unlawful. Accordingly, this cause must be remanded to the circuit court to determine, on the record, whether the revocation of plaintiff's good conduct credits was in accordance with the law.

¶ 83    Plaintiff's *pro se* filing also requested the issuance of a writ of *mandamus*. Like the writ of *certiorari*, the writ of *mandamus* should only issue if it would accomplish "substantial justice" that outweighs any disruption the writ might cause. *People ex rel. Stettauer v. Olsen*, 215 Ill. 620, 622 (1905). Thus, in prison discipline cases, the same concerns that justify limiting the scope of the writ of *certiorari* to punishments involving atypical and significant hardships also justify similarly limiting the scope of the writ of *mandamus*. In this case, it would be premature to determine whether any writ of *mandamus* must issue with respect to the revocation of plaintiff's good conduct credits. The circuit court may order an entirely new disciplinary hearing regarding the revocation, and if such a hearing should be ordered, any *mandamus* relief would be unnecessary.

¶ 84    For the foregoing reasons, I specially concur.

¶ 85    JUSTICE NEVILLE joins in this special concurrence.