NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190254-U

NO. 4-19-0254

FILED
May 13, 2020
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| BRIAN HARGARTEN, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| GREGORY KOCHEL, TROY DAVIS, ABERARDO | ) | No. 17MR67 |
| SALINAS, SHARON SIMPSON, GUY PIERCE, | ) | |
| MICHAEL MELVIN, SHERRY BENTON, and JOHN | ) | |
| BALDWIN, | ) | Honorable |
|     Defendants-Appellees. | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding plaintiff failed to establish a due process violation.

¶ 2    Plaintiff, Brian Hargarten, an inmate in the custody of the Illinois Department of Corrections (DOC), appeals from the trial court's denial of relief on his complaint against various DOC officials and employees. On appeal, plaintiff argues the administrative record of his prison disciplinary proceedings demonstrates he was denied due process during those proceedings. We affirm.

¶ 3    I. BACKGROUND

¶ 4    According to DOC prison inmate search results, plaintiff is currently serving a 62-year sentence for first degree murder and has a projected parole date of November 21, 2070. See https://www2.illinois.gov/idoc/Offender/pages/inmatesearch.aspx (last visited April 13, 2020);

see also *People v. Hargarten*, 2014 IL App (1st) 122600-U, ¶ 34 (affirming plaintiff's conviction and sentence on direct review).

¶ 5                                              A. Complaint

¶ 6            In March 2017, plaintiff filed a complaint seeking to have disciplinary proceedings which allegedly resulted in plaintiff's loss of good conduct credit reviewed under a common-law writ of *certiorari*. Plaintiff named the following DOC officials and employees as defendants: Gregory Kochel, Troy Davis, Aberardo Salinas, Guy Pierce, Sharon Simpson, Michael Melvin, Sherry Benton, and John Baldwin. Plaintiff raised multiple claims of error concerning the disciplinary proceedings. Plaintiff alleged his due process rights were violated where he was not permitted to review a letter he authored.

¶ 7                                            B. Motion to Dismiss

¶ 8            In November 2017, defendants filed a motion to dismiss plaintiff's complaint. In March 2018, the trial court denied defendants' motion to dismiss and directed them to file a responsive pleading.

¶ 9                                              C. Answer

¶ 10           In June 2018, defendants filed as their answer a copy of the administrative record of the disciplinary proceedings. The administrative record contained, in part, the following: an inmate disciplinary report, a written statement plaintiff prepared for an adjustment committee hearing, an adjustment committee's final summary report, a grievance plaintiff filed following the adjustment committee hearing, a grievance officer report denying plaintiff's grievance, and a letter ruling on plaintiff's appeal from the denial of his grievance. The following is gleaned from the administrative record.

¶ 11        On February 25, 2016, plaintiff, who was then imprisoned at Pontiac Correctional Center (Pontiac), was served with an inmate disciplinary report authored by Gregory Kochel. According to the report, on February 24, 2016, Kochel intercepted an outgoing letter authored by plaintiff, a self-admitted member of the Ambrose security threat group, or gang, at Pontiac. Plaintiff was attempting to send the letter through a third party to a fellow Ambrose member who was housed at Menard Correctional Center (Menard). The letter indicated a third Ambrose member who was housed at Menard was "all good," meaning the member had been cleared of any wrongdoing by the Ambrose and Latin Folk security threat groups. Based on the letter, the inmate disciplinary report indicated plaintiff had violated DOC regulation 205, which prohibits security threat group or unauthorized organizational activity. See 20 Ill. Adm. Code 504.Appendix A (No. 205), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003).

¶ 12        Prior to an adjustment committee hearing, plaintiff prepared a written statement. In the statement, plaintiff, in part, (1) denied being a member of any security threat group, (2) asserted the "all good" language in the letter he authored was taken out of context and in fact referred to his cousin who was not incarcerated and was recovering from gunshot wounds, (3) requested the adjustment committee read the entire letter so the "all good" language could be considered in context, and (4) asserted withholding "the full totality of the letter is a violation of due process as offender's letter in totality did not consist of merely [two] words."

¶ 13        On March 7, 2016, plaintiff was served with a final summary report from the adjustment committee, which consisted of chairman Troy Davis and member Aberardo Salinas. According to the report, plaintiff appeared before the adjustment committee for a hearing on March 1, 2016. The disciplinary report was read, plaintiff pleaded not guilty, and plaintiff's written

- 3 -

statement was submitted. Plaintiff admitted he was trying to write another inmate at Menard but asserted the letter was taken out of context. The adjustment committee was satisfied the violation occurred as reported and recommended, in part, revocation of one year of good conduct credit. Guy D. Pierce, the chief administrative officer, approved the adjustment committee's determinations.

¶ 14 On March 17, 2016, plaintiff filed a grievance raising multiple complaints concerning the disciplinary proceedings. Plaintiff argued, in part, the "[adjustment] committee *** committed a violation of offender's due process" by refusing his requests to produce the letter. In the factual background of his grievance, plaintiff alleged, after receiving the inmate disciplinary report, he requested the letter be presented at the adjustment committee hearing. Plaintiff also alleged the adjustment committee refused to produce the letter during the hearing despite his request.

¶ 15 In June 2016, Sharon Simpson, a grievance officer, issued a grievance officer's report recommending plaintiff's grievance be denied. Michael Melvin, the chief administrative officer who succeeded Pierce, concurred with Simpson's recommendation. Plaintiff appealed to the DOC's director, and the matter was referred to its administrative review board.

¶ 16 In December 2016, Sherry Benton, a member of the administrative review board, issued a letter to plaintiff informing him the board was reasonably satisfied he committed the offense and his claims of due process were unsubstantiated. John Baldwin, the acting director of the board, concurred with the board's decision.

¶ 17 D. Briefs in Support of the Disciplinary Proceedings

¶ 18 In October 2018, defendants filed a brief in support of the disciplinary proceedings,

arguing, in part, plaintiff received the due process to which he was entitled throughout the disciplinary proceedings. In December 2018, plaintiff filed a responding brief, arguing, in part, he was denied due process where the letter was not produced despite his requests.

¶ 19                                    E. Denial of Relief

¶ 20        In April 2019, the trial court entered a docket entry denying plaintiff's "petition" for *certiorari* review. The court found, after reviewing the administrative record of the disciplinary proceedings, plaintiff received the due process to which he was entitled throughout the disciplinary proceedings.

¶ 21        This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23        On appeal, plaintiff argues the administrative record of his prison disciplinary proceedings demonstrates he was denied due process during those proceedings. Defendants disagree.

¶ 24        In his complaint, defendant sought to have the disciplinary proceedings reviewed under a common-law writ of *certiorari* as he believed, in part, his due process rights were violated during those proceedings. A common-law writ of *certiorari* is a method for obtaining judicial review of administrative actions when the statute conferring power on the agency does not expressly adopt the Administrative Review Law (ARL) (735 ILCS 5/3-101 to 3-113 (West 2016)) and provides for no other form of review. *Fillmore v. Taylor*, 2019 IL 122626, ¶ 67, 137 N.E.3d 779. Because the statutes concerning prison disciplinary proceedings neither adopt the ARL nor provide another form of review, "properly pled allegations of a denial of due process in prison disciplinary proceedings are reviewable in an action for *certiorari*." *Id.*

¶ 25 After denying defendants' motion to dismiss, the trial court directed defendants to file a responsive pleading, which caused defendants to file the administrative record of the prison disciplinary proceedings. "[A] common-law writ of *certiorari* 'bring[s] before the court issuing it the record of the inferior tribunal for review' *** so that the court can determine from the record *** whether the agency acted within its statutory authority and in accordance with the law." *Fillmore v. Taylor*, 2017 IL App (4th) 160309, ¶ 74, 80 N.E.3d 835 (quoting *Barden v. Junior College District No. 520*, 132 Ill. App. 2d 1038, 1038, 271 N.E.2d 680, 681 (1971)), *rev'd in part on other grounds*, 2019 IL 122626. By its actions, the trial court in this case effectively issued the writ of *certiorari* and brought the record of the prison disciplinary proceedings before it to consider plaintiff's due process claim.

¶ 26 The trial court "denied" plaintiff's "petition" for *certiorari* review, finding, after its review of the administrative record, plaintiff received the due process to which he was entitled during the disciplinary proceedings. In those cases where a trial court issues a writ of *certiorari* and then reviews the record from the inferior tribunal, the court should enter either of two judgments: (1) dismiss the *certiorari* count and quash the writ if it is determined the inferior tribunal acted within its statutory authority and its actions were consistent with the law or (2) quash the proceedings of the inferior tribunal if it determines the agency lacked statutory authority or its actions were inconsistent with the law. *Id.* ¶ 75. By its actions, the trial court in this case effectively dismissed the *certiorari* count and quashed the writ based on its determination plaintiff received the due process to which he was entitled throughout the disciplinary proceedings.

¶ 27 On appeal, plaintiff contends, contrary to the findings of the administrative agency and the trial court, a review of the administrative record demonstrates he was denied due process

- 6 -

where he was not permitted to review the letter he authored. This court treats an appeal from a trial court's ruling on a writ of *certiorari* as it would any administrative review appeal—we review the decision of the agency rather than the decision of the trial court. *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 337, 909 N.E.2d 806, 814 (2009). Further, an issue of law, such as whether an inmate received the due process to which he or she is entitled during a disciplinary proceeding, is reviewed *de novo*. *Thomas v. Chicago Transit Authority*, 2014 IL App (1st) 122402, ¶ 38, 24 N.E.3d 245.

¶ 28    An inmate who may lose good conduct credit as a result of a disciplinary proceeding is entitled to certain due process guarantees. *Fillmore*, 2019 IL 122626, ¶ 57. The inmate must receive:

> "(1) advance written notice of the disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense, and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action."

> *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).

Additionally, the findings of the disciplinary board "must be supported by some evidence in the record" to comport with due process. *Id.*

¶ 29    Plaintiff's sole argument on appeal for why he believes he was denied due process during the disciplinary proceedings relates to the fact he was not permitted to review the letter he authored. In support of his argument, plaintiff relies on the supreme court's recent decision in *Fillmore*, which reversed and remanded for further proceedings on an inmate's claim suggesting

prison officials violated his due process rights by denying him the opportunity to present witnesses and documentary evidence. *Id.* ¶ 60.

¶ 30        *Fillmore* does not support plaintiff's position. In that case, the supreme court was tasked with determining whether the inmate had sufficiently pled, for purposes of surviving a section 2-615 motion to dismiss, a due process violation based on an alleged denial of the inmate's witness and evidence requests. *Id.* ¶¶ 60-64. In this case, we are tasked with determining whether plaintiff has established a due process violation based solely on the fact he was not permitted to review a letter he authored.

¶ 31        Under the circumstances of this case, we are unconvinced the denial of plaintiff's request to review the letter he authored amounts to a due process violation. Plaintiff did not deny authoring the letter or including the "all good" language in the letter. Rather, the issue in dispute during the adjustment committee hearing was the meaning behind the "all good" language. Plaintiff was permitted to submit a written statement in support of his interpretation. Ultimately, the adjustment committee was presented with two interpretations of the language and found against plaintiff's interpretation. After our review, we agree with both the trial court and the administrative agency—plaintiff has failed to establish a due process violation.

¶ 32                               III. CONCLUSION

¶ 33        We affirm the trial court's judgment.

¶ 34        Affirmed.